Liza M. Walsh
Marc D. Haefner
Jessica K. Formichella
Walsh Pizzi O'Reilly Falanga LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

*Attorneys for Amgen Inc. and*
*Amgen Manufacturing Limited LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMGEN INC.<br>and AMGEN MANUFACTURING<br>LIMITED LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DR. REDDY'S LABORATORIES LTD.,<br>DR. REDDY'S LABORATORIES SA, DR.<br>REDDY'S LABORATORIES INC.,<br>ALVOTECH HF AND ALVOTECH<br>SWISS AG,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT<br>& DEMAND FOR A JURY TRIAL**<br><br>**Redacted Version** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Amgen Inc. and Amgen Manufacturing Limited LLC (together "Amgen" or

"Plaintiffs"), by and through their undersigned attorneys, for their Complaint against Defendants

Dr. Reddy's Laboratories Ltd., Dr. Reddy's Laboratories SA, Dr. Reddy's Laboratories Inc.,

Alvotech Hf., and Alvotech Swiss AG (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the laws of the United States, Title 35 United States Code §§ 1, *et seq.*, including 35 U.S.C. § 271(e)(2)(C), which was enacted in 2010 as part of the Biologics Price Competition and Innovation Act ("the BPCIA"), Pub. L. No. 111–148, §§ 7001–03, 124 Stat. 119, 804–21 (2010), including 42 U.S.C. § 262(*l*), and the Declaratory Judgment Act of 1934, 28 U.S.C. §§ 2201–02.

2.      The BPCIA created an abbreviated pathway for the approval of biosimilar versions of approved biologic drugs. 42 U.S.C. § 262(k). This abbreviated pathway allows a biosimilar applicant, such as Dr. Reddy's Laboratories SA ("DRL Swiss"), to rely on the prior licensure and approval status of the innovative biologic products that the biosimilar seeks to replicate.

3.      This action arises out of Defendants' submission of abbreviated Biologic License Application ("BLA") No. ████ to the U.S. Food and Drug Administration ("FDA") on ████████, pursuant to 42 U.S.C. § 262(k), seeking approval to manufacture and sell biosimilar versions of Amgen's Prolia® and XGEVA® drug products. This action further arises from Defendants' imminent and actual import, and imminent commercial manufacture, offer for sale, and sale of that proposed biosimilar product.

4.      Prolia is prescribed to treat patients with a high risk of bone fracture in certain settings, such as patients suffering from osteoporosis. XGEVA is prescribed to prevent skeletal-related events (*e.g.*, fractures or spinal cord compression) in cancer patients whose cancer has spread to the bone, as well as to treat certain types of tumors. The active ingredient in these two drugs is an antibody called denosumab. Amgen's scientists and clinicians have spent decades elucidating the biology of bone remodeling, creating the denosumab antibody, and developing Prolia and XGEVA. Amgen's innovative work on Prolia and XGEVA has benefited a

tremendous number of patients. To support its portfolio of complex biological products such as Prolia and XGEVA, Amgen scientists have also made significant advancements in manufacturing processes that enhance product yield, consistency, and quality.

5.     The asserted patents in this action cover the denosumab antibody and pharmaceutical compositions comprising denosumab (the active ingredient in Prolia and XGEVA), innovative methods of manufacturing therapeutic proteins like denosumab and denosumab products. The asserted patents (collectively, "the Patents-in-Suit") are as follows: U.S. Patent Nos. 7,364,736 (the "Boyle '736 Patent"); 7,888,101 (the "Crowell '101 Patent"); 7,928,205 (the "Dillon '205 Patent"); 8,053,236 (the "Morris '236 Patent"); 8,058,418 (the "Boyle '418 Patent"); 8,460,896 (the "Crowell '896 Patent"); 8,680,248 (the "Crowell '248 Patent"); 9,012,178 (the "Kang '178 Patent"); 9,228,168 (the "Morris '168 Patent"); 9,328,134 (the "Allen '134 Patent"); 9,359,435 (the "Wu '435 Patent"); 10,106,829 (the "Gupta '829 Patent"); 10,167,492 (the "Leiske '492 Patent"); 10,227,627 (the "Gupta '627 Patent"); 10,513,723 (the "Kang '723 Patent"); 10,583,397 (the "Gefroh '397 Patent"); 10,822,630 (the "Leiske '630 Patent"); 10,894,972 (the "Huang '972 Patent"); 11,077,404 (the "Gefroh '404 Patent"); 11,098,079 (the "Hoang '079 Patent"); 11,130,980 (the "Pande '980 Patent"); 11,192,919 (the "Trejo '919 Patent"); 11,254,963 (the "Kang '963 Patent"); 11,299,760 (the "Pande '760 Patent"); 11,319,568 (the "Wu '568 Patent"); 11,434,514 (the "Huang '514 Patent"); 11,459,595 (the "Wu '595 Patent"); 11,492,372 (the "Trejo '372 Patent"); 11,946,085 (the "Huang '085 Patent"); 11,952,605 (the "Wu '605 Patent"); and 12,084,686 (the "Crowell '686 Patent").

6.     On ▮▮▮▮▮▮▮▮, Defendants informed Amgen that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████" Defendants' BLA No. █████ was submitted on ████████████

███ and accepted for review by the FDA on ██████████ making ████████████

Defendants' deadline for compliance with 42 U.S.C. § 262(*l*)(2)(A).

7.       On ██████████, Defendants also informed Amgen that pursuant to

section 262(*l*)(2)(A), they were sending Amgen a copy of their BLA. Defendants' BLA indicates

Defendants are seeking approval to manufacture and sell biosimilar versions of Amgen's Prolia

and XGEVA denosumab drug products, designated "AVT03."

8.       Upon reviewing Defendants' initial document production, Amgen determined that

Defendants had not complied with the requirements set out in section 262(*l*)(2)(A) of the BPCIA,

which requires disclosure not only of a copy of the BLA submitted to the FDA, but also "such

other information that describes the process or processes used to manufacture the biological

product that is the subject of such application." 42 U.S.C. § 262(*l*)(2)(A). Such information is

critical for Amgen to achieve a complete understanding of Defendants' manufacturing process,

which is necessary for Amgen to participate in the pre-litigation exchange and negotiation

contemplated by the BPCIA. Defendants' failure to comply with section 262(*l*)(2)(A) triggered

the provisions of 42 U.S.C. § 262(*l*)(9).

9.       Nevertheless, since receiving Defendants' initial BLA production, Amgen has

diligently evaluated the produced documents and repeatedly requested that Defendants correct or

supplement their deficient production. In ████████████████████, Amgen informed

Defendants of missing documents and information concerning the process used to manufacture

AVT03. Although Defendants supplemented their production in partial response to some of

Amgen's requests, there is no provision of the BPCIA for retroactive compliance with section

262(*l*)(2)(A), and Defendants refused to produce other information. The materials Defendants produced to Amgen remain deficient.

10.     Despite Defendants' failure to comply with section 262(*l*)(2)(A), Amgen has participated in the pre-litigation exchange contemplated under the BPCIA to the best of its ability and in the spirit of potentially narrowing disputes between the parties. Amgen's efforts, however, have been frustrated by Defendants' initial and ongoing failure to comply with section 262(*l*)(2)(A) of the BPCIA. Defendants' failure to produce required information under section 262(*l*)(2)(A) has prejudiced and will continue to prejudice Amgen's efforts to conduct a complete patent infringement analysis under the BPCIA.

11.     After conducting an analysis to the best of its ability based on the limited information available, on ███████, Amgen provided Defendants a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of Defendants' BLA is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen. All of the Patents-in-Suit were identified in Amgen's ████████, letter and could have been identified in a list pursuant to 42 U.S.C. § 262(*l*)(3)(A) had Defendants complied with section 262(*l*)(2)(A).

12.     On ███████, Defendants tendered to Amgen a purported "statement" in response to Amgen's list of patents. Defendants' statement provided vague, conclusory, and unsubstantiated assertions of non-infringement and invalidity, and failed to provide the necessary information for Amgen to verify Defendants' claims.

13.     As alleged herein, Defendants' failure to comply with section 262(*l*)(2)(A) authorizes Amgen to file a suit for a declaration of infringement. 42 U.S.C. § 262(*l*)(9)(C); *see also Sandoz v. Amgen*, 137 S. Ct. 1664, 1667–68 (2017) ("§ 262(*l*)(9)(C) provides a remedy for

an applicant's failure to turn over its application and manufacturing information" by authorizing the sponsor "to bring an immediate declaratory judgment action for artificial infringement.").

14.     On information and belief—including based on the information available in Defendants' BLA and documents produced thus far—Defendants have infringed or will imminently infringe the Patents-in-Suit under 35 U.S.C. § 271(e)(2)(C), as evidenced by Defendants' submitting a BLA seeking the FDA's approval under 42 U.S.C. § 262(k) to engage in the commercial manufacture, use, sale, or offer for sale of their denosumab biosimilar products before the expiration of the Patents-in-Suit.

15.     As further alleged herein, on information and belief, Defendants have infringed or will imminently infringe one or more claims of the Patents-in-Suit under at least 35 U.S.C. § 271(a), (b), (e), and/or (g) by making, using, offering for sale, or selling within the United States, or importing into the United States, one or more of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit.

## THE PARTIES

### A.     Plaintiffs

16.     Amgen Inc. is the sponsor of the reference products, Prolia and XGEVA, which the FDA has approved for a number of different therapeutic uses (termed "indications"). Amgen Inc. is the owner of all rights, title, and interest in each of the Patents-in-Suit. Amgen Manufacturing Limited LLC is the exclusive licensee of the Patents-in-Suit in the United States and its territories for commercialization of Prolia and XGEVA.

17.     Amgen Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One Amgen Center Drive, Thousand Oaks, California 91320.

18.     Amgen Manufacturing Limited LLC ("AML") is a corporation existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business at Road 31 km 24.6, Juncos, Puerto Rico 00777. AML is a wholly owned subsidiary of Amgen Inc.

19.     Amgen is one of the world's leading biopharmaceutical companies and is dedicated to using discoveries in human biology to invent, develop, manufacture, and sell innovative therapeutic products based on advances in molecular biology, recombinant DNA technology, and chemistry for the benefit of patients suffering from serious illness. To that end, Amgen has invested billions of dollars into its research and development efforts. The two denosumab biological drug products that Defendants now seek to copy, Prolia and XGEVA, are the result of Amgen's innovations. Amgen brings this action to redress and halt the Defendants' actual and intended infringement of the Patents-in-Suit.

**B.     Defendants**

20.     On information and belief, Dr. Reddy's Laboratories Ltd. ("DRL India"), Dr. Reddy's Laboratories SA ("DRL Swiss"), along with their affiliates, "will be responsible for registration and commercialization of the [AVT03 drug] product in the applicable markets" via commercialization rights "exclusive for the U.S., and semi-exclusive for Europe and the UK."[1]

21.     DRL India is a corporation organized and existing under the laws of India, with, on information and belief, its principal place of business at 8-2-337 Road No. 3, Banjara Hills, Hyderabad, Telangana 500034, India.

---

[1] Alvotech, *Alvotech and Dr. Reddy's enter into a collaboration for commercialization of AVT03 (denosumab), a biosimilar candidate to Prolia® & XGEVA® in the U.S., Europe, and the UK* (May 21, 2024), https://investors.alvotech.com/news-releases/news-release-details/alvotech-and-dr-reddys-enter-collaboration-commercialization (last accessed Nov. 5, 2025).

22.     On information and belief, DRL India wholly owns DRL Swiss[2] and Dr. Reddy's Laboratories Inc. ("DRL US").[3]

23.     DRL Swiss is a corporation organized and existing under the laws of Switzerland, with, on information and belief, its principal place of business at Elisabethenanlage 11, Basel, Switzerland CH-4051.

24.     DRL Swiss ████████████████████████████████████████ ████████████████████████████ referencing Amgen's Prolia and XGEVA denosumab drug products. Defendants' submissions to the FDA state that the AVT03 denosumab biosimilar drug products ████████████████████████.

25.     DRL US is a corporation organized and existing under the laws of New Jersey, with, on information and belief, its principal place of business at 107 College Road East, Princeton, NJ 08540.

26.     DRL US ████████████████████████████████████████ ██████████████████████████████████████████████████████.

27.     Alvotech Hf. ("Alvotech Iceland") is a corporation organized and existing under the laws of Iceland, with, on information and belief, its principal place of business at Saemundargata 15-19 102 Reykjavik, Iceland. Alvotech Iceland holds itself out as "a global biotech company specializing in the development and manufacture of biosimilar medicines for patients worldwide."[4]

---

[2] *Id.*

[3] Dr. Reddy's Laboratories Limited Integrated Annual Report FY 2024-25, https://www.drreddys .com/cms/cms/sites/default/files/2025-06/Integrated%20Annual%20Report%202024-25.pdf (last accessed Nov. 5, 2025).

[4] *Id.*

28.    Defendants' BLA indicates that ███████████████████████████

████████████████████████████████████████████████████. On

information and belief, under the terms of a license and supply agreement for the

commercialization of AVT03 entered into around May 21, 2024, Alvotech Iceland "will be

responsible for development and manufacturing of the product."[5]

29.    Alvotech Swiss AG ("Alvotech Swiss") is a corporation organized and existing

under the laws of Switzerland, with, on information and belief, its principal place of business at

Thurgauerstrasse 54-8050, Zurich, Switzerland. On information and belief, Alvotech Swiss is a

wholly owned subsidiary of Alvotech Iceland.[6]

30.    ████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

---

[5] *Id.*

[6] SEC Edgar Archives, https://www.sec.gov/Archives/edgar/data/1898416/000119312523
056506/R64.htm (last accessed Nov. 5, 2025).

[7] ████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████.

31.    Alvotech Swiss has sponsored two clinical trials for AVT03.[8]

32.    On information and belief, DRL Swiss, acting in concert with DRL India, DRL US, Alvotech Iceland, and Alvotech Swiss, is in the business of developing, manufacturing, and seeking regulatory approval for developing, manufacturing, importing, marketing, distributing, using, offering to sell, and/or selling biopharmaceutical products (including products intended to be sold as biosimilar versions of successful biopharmaceutical products developed by others) in New Jersey and throughout the United States, through its own actions and through the actions of its agents.

33.    On information and belief, DRL Swiss, in concert with DRL India, DRL US, Alvotech Iceland, and Alvotech Swiss, intends to develop, manufacture, import, market, distribute, offer for sale, and/or sell in New Jersey and across the United States biosimilar versions of Amgen's Prolia and XGEVA upon FDA approval and in doing so, will improperly exploit Amgen's intellectual property surrounding these important medicines.

## JURISDICTION AND VENUE

### A.    Subject-Matter Jurisdiction

34.    This action arises under the patent laws of the United States, Title 35 of the United States Code, Title 42 of the United States Code, and under the Declaratory Judgment Act of 1934 (28 U.S.C. §§ 2201–02), Title 28 of the United States Code.

---

[8] *AVT03 With Prolia in Healthy Male Subjects*, CLINICALTRIALS.GOV (last updated May 29, 2024), https://clinicaltrials.gov/study/NCT05126784 (last accessed Nov. 5, 2025); Multicenter Study in Postmenopausal Women with Osteoporosis, ALVOBOND, CLINICALTRIALS.GOV (last updated Oct. 10, 2024), https://clinicaltrials.gov/study/NCT05087030 (last accessed Nov. 5, 2025).

35.     This Court has subject-matter jurisdiction over Amgen's claims under 28 U.S.C.

§§ 1331, 1338(a), 2201(a), and 2202.

**B.     Venue and Personal Jurisdiction**

36.     Venue as to DRL India is proper in this District pursuant to 28 U.S.C.

§ 1391(c)(3) because it is a foreign corporation and is therefore subject to suit in any judicial

district.[9]

37.     Venue as to DRL Swiss is proper in this District pursuant to 28 U.S.C.

§ 1391(c)(3) because it is a foreign corporation and is therefore subject to suit in any judicial

district.

38.     Venue as to DRL US is proper in this District pursuant to 28 U.S.C. § 1400(b)

because, on information and belief, DRL US has systematic and continuous contacts with New

Jersey; has a regular and established place of business in New Jersey; has its headquarters and

principal place of business in Princeton, NJ 08540; and, in particular, on information and belief,

DRL US has committed an act of patent infringement under 35 U.S.C. § 271(e)(2)(C) by

preparing and submitting BLA No. ███ in and from New Jersey, receiving correspondence

with the FDA regarding Defendants' BLA at its office in New Jersey, and attending FDA pre-

investigational meetings virtually from its office in New Jersey and/or preparing for such FDA

pre-investigational meetings from its office in New Jersey.

39.     Venue as to Alvotech Iceland is proper in this District pursuant to

28 U.S.C. § 1391(c)(3) because it is a foreign corporation and is therefore subject to suit in any

judicial district.

---

[9] *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 713–14 (1972); *In re HTC Corp.*, 889 F.3d 1349, 1357–58 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 1271 (2019).

40. Venue as to Alvotech Swiss is proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because it is a foreign corporation and is therefore subject to suit in any judicial district.

41. On information and belief, DRL Swiss develops, manufactures, seeks regulatory approval for, markets, distributes, and sells pharmaceutical products, for use throughout the United States, including in this District.

42. On information and belief, DRL India develops, manufactures, seeks regulatory approval for, markets, distributes, and sells pharmaceutical products, for use throughout the United States including in this District.

43. On information and belief, DRL US, DRL India, DRL Swiss, Alvotech Iceland, and Alvotech Swiss collaborated to develop, manufacture, seek regulatory approval for, market, distribute, and sell pharmaceutical products for use throughout the United States including in this District.

44. On information and belief, DRL US, DRL India, DRL Swiss, Alvotech Swiss, and Alvotech Iceland collaborated to take substantial steps to prepare for and undertake the filing of a BLA for their proposed denosumab biosimilar products. On information and belief, such steps included preparing and submitting the BLA and sending and receiving correspondence with the FDA regarding Defendants' BLA.

45. Venue is proper and this Court also has personal jurisdiction over each of the Defendants for the reasons set forth below.

**C.    Dr. Reddy's Laboratories Ltd. (DRL India)**

46. This Court has personal jurisdiction over DRL India because, among other reasons, DRL India, itself and through its collaboration with DRL US and DRL Swiss, has

purposely availed itself of the benefits and protections of New Jersey laws such that it should reasonably anticipate being sued in this Court.

47.     On information and belief, DRL India intends to participate in the commercialization of Defendants' proposed denosumab biosimilar products, for sale in New Jersey and the United States, upon FDA approval. On information and belief, DRL India will accordingly benefit commercially and be financially compensated for its active involvement in the use or sale of Defendant's proposed biosimilar products in New Jersey and the United States.

48.     On information and belief, the exercise of personal jurisdiction over DRL India in this federal judicial district would not unfairly burden DRL India.

49.     Additionally, and in the alternative, this court has personal jurisdiction over DRL India under Federal Rule of Civil Procedure 4(k)(2) because Amgen's claims arise under federal law; DRL India is a foreign defendant that is not subject to general personal jurisdiction in any state; and, on information and belief; DRL India has sufficient contacts with the United States as a whole, including but not limited to, filing BLAs with the FDA and manufacturing and selling generic or biosimilar pharmaceutical products through its U.S. affiliates and agents for distribution throughout the United States, such that this Court's exercise of jurisdiction over DRL India satisfies due process.

   **D.    Dr. Reddy's Laboratories Inc. (DRL US)**

50.     DRL US is subject to personal jurisdiction in New Jersey because it maintains its principal place of business in New Jersey. On information and belief, DRL US markets, distributes, offers for sale, and sells biopharmaceuticals for sale and use throughout the United States, including in New Jersey and this federal judicial district, and therefore transacts or intends to transact business within the State of New Jersey related to Amgen's claims, and/or has engaged in systematic and continuous business contacts within the State of New Jersey. DRL US

has thus purposely availed itself of the benefits and protections of New Jersey laws such that it should reasonably anticipate being sued in this Court, and this Court's exercise of jurisdiction over DRL US satisfies due process.

51.    On information and belief, DRL US is registered with the State of New Jersey's Division of Revenue and Enterprise Services as a business operating in New Jersey under Business ID No. 0100518911.

52.    On information and belief, the exercise of personal jurisdiction over DRL US in this federal judicial district would not unfairly burden DRL US, which maintains its principal office in this judicial district.

**E.    Dr. Reddy's Laboratories SA (DRL Swiss)**

53.    DRL Swiss is subject to personal jurisdiction in New Jersey because, among other reasons, through its collaboration with DRL US, DRL India, Alvotech Iceland, and Alvotech Swiss, DRL Swiss has purposely availed itself of the benefits and protections of New Jersey laws such that it should reasonably anticipate being sued in this Court.

54.    On information and belief, DRL Swiss worked in concert with DRL India, DRL US, Alvotech Iceland, and Alvotech Swiss, to take the significant step to prepare and file Defendants' BLA seeking approval from the FDA to engage in the importation, use, offer for sale, or sale of Defendants' proposed denosumab biosimilar products in New Jersey and throughout the United States.

55.    On information and belief, DRL Swiss intends to participate in the commercialization of Defendants' proposed denosumab biosimilar products, for sale in New Jersey and in the United States, upon FDA approval. On information and belief, DRL Swiss will accordingly benefit commercially and be financially compensated for its active involvement in

14

the use or sale of Defendants' proposed denosumab biosimilar products in New Jersey and in the United States.

57.     On information and belief, the exercise of personal jurisdiction over DRL Swiss in this federal judicial district would not unfairly burden DRL Swiss.

57.     Additionally, and in the alternative, this Court has personal jurisdiction over DRL Swiss under Federal Rule of Civil Procedure 4(k)(2) because Amgen's claims arise under federal law; DRL Swiss is a foreign defendant that is not subject to general personal jurisdiction in any state; and, on information and belief, DRL Swiss has sufficient contacts with the United States as a whole, including but not limited to, sponsoring the clinical trials for potential biosimilar pharmaceutical products intended to be sold through its U.S. affiliates and agents that are distributed throughout the United States, such that this Court's exercise of jurisdiction over DRL Swiss satisfies due process.

**F.     Alvotech Hf. (Alvotech Iceland)**

58.     Alvotech Iceland is subject to personal jurisdiction in New Jersey because, among other reasons, through its collaboration with DRL US, DRL India, DRL Swiss, and Alvotech Swiss, Alvotech Iceland has purposely availed itself of the benefits and protections of New Jersey laws such that it should reasonably anticipate being sued in this Court.

59.     On information and belief, Alvotech Iceland is the commercial developer and manufacturer for Defendants' proposed denosumab biosimilar products for sale in New Jersey and in the United States upon FDA approval. On information and belief, Alvotech Iceland has or will benefit commercially and be financially compensated for its active involvement in the use or sale of Defendants' proposed denosumab biosimilar products in New Jersey and in the United States.

60.     On information and belief, the exercise of personal jurisdiction over Alvotech Iceland in this federal judicial district would not unfairly burden Alvotech Iceland.

61.     Additionally, and in the alternative, this Court has personal jurisdiction over Alvotech Iceland under Federal Rule of Civil Procedure 4(k)(2) because Amgen's claims arise under federal law; Alvotech Iceland is a foreign defendant that is not subject to general personal jurisdiction in any state; and on information and belief, Alvotech Iceland has sufficient contacts with the United States as a whole, including but not limited to working in concert with Alvotech Swiss, a wholly owned subsidiary of Alvotech Iceland, to sponsor the clinical trials for potential biosimilar pharmaceuticals products intended to be sold through its U.S. affiliates and agents that are distributed through its U.S. affiliates that are distributed throughout the United States, such that this Court's exercise of jurisdiction over Alvotech Iceland satisfies due process.

**G.     Alvotech Swiss AG (Alvotech Swiss)**

62.     Alvotech Swiss is subject to personal jurisdiction in New Jersey because, among other reasons, through its collaboration with Alvotech Iceland, DRL India, DRL Swiss, and DRL US, Alvotech Swiss has purposefully availed itself of the benefits and protections of New Jersey laws such that it should reasonably anticipate being sued in this Court.

63.     On information and belief, Alvotech Swiss worked in concert with Alvotech Iceland, DRL India, DRL Swiss, and DRL US, to take the significant step to prepare and file Defendant's BLA seeking approval from the FDA to engage in the importation, use, offer for sale, or sale of Defendants' proposed denosumab biosimilar products in New Jersey and the United States. Alvotech Swiss specifically serves as the sponsor of AVT03 clinical trials and particulates in pre-approval meetings with the FDA.

64.     On information and belief, the exercise of personal jurisdiction over Alvotech Swiss in this federal judicial district would not unfairly burden Alvotech Swiss.

65.     Additionally, and in the alternative, this Court has personal jurisdiction over Alvotech Swiss under Federal Rule of Civil Procedure 4(k)(2) because Amgen's claims arise under federal law; Alvotech Swiss is a foreign defendant that is not subject to general personal jurisdiction in any state; and, on information and belief, Alvotech Swiss has sufficient contacts with the United States as a whole, including but not limited to, sponsoring clinical trials for potential biosimilar pharmaceutical products intended to be sold through its U.S. affiliates and agents that are distributed throughout the United States, such that this Court's exercise of jurisdiction over Alvotech Swiss satisfies due process.

## THE PROLIA AND XGEVA DRUG PRODUCTS

### A.     Bone Metabolism and RANKL

66.     Human bones undergo a lifelong cycle of growth and resorption (*i.e.*, destruction) that is essential to preserving bone integrity. This bone remodeling cycle involves a series of coordinated steps carefully regulated by complex signaling pathways in the body.

67.     All tissues in the body express, or produce, proteins. Among those proteins is receptor activator of nuclear factor kappa-β (also known as "RANK"), which is found on the surface of cells called osteoclast precursors. RANK selectively binds to another protein—its binding partner or "ligand"—called RANK ligand ("RANKL").[10] When RANKL binds to RANK on the surface of osteoclast precursors, the interaction stimulates the precursor cell to transform into a mature osteoclast cell. Mature osteoclasts carry out bone resorption, *i.e.*, the breakdown of bone. A different type of cell in the bone environment is called an "osteoblast." It performs the opposite function as the osteoclast—it forms new bone.

---

[10] RANK and RANKL are also sometimes referred to as osteoclast differentiation and activation receptor ("ODAR") and osteoprotegerin ligand ("OPGL") respectively.

68.     Normally, bone resorption is carried out in balance with bone formation. However, imbalances between bone formation and bone resorption can occur. Imbalances can result, for example, from menopause in women, glucocorticoid medications, androgen deprivation therapy for prostate cancer, adjuvant aromatase inhibitor therapy for breast cancer, hyperparathyroidism, rheumatoid arthritis, and certain forms of bone cancer. A common consequence of this imbalance is excess bone loss, putting patients at higher risk for bone fractures.

**B.      Amgen's Invention of Prolia and XGEVA**

69.     Amgen developed Prolia and XGEVA after years of groundbreaking research into the bone remodeling pathway. This research dates back to the late 1990s, when studies by Amgen Inc. scientists identified the relationship between the protein RANKL (what they originally called "OPGL") and bone resorption. Amgen devoted significant resources to developing a treatment for diseases mediated by this mechanism, such as osteoporosis and disease states characterized by weakened bones, and invented novel pharmaceutical compositions that could be used in the treatment of such diseases.

70.     An Amgen team led by named inventor Dr. William Boyle pursued several avenues to create a biologic treatment that would interfere with interactions between RANKL and RANK and thereby reduce the rate of bone resorption in a patient. Among these efforts was a collaboration with Abgenix, Inc. using the latter's XenoMouse™ transgenic mouse platform. In collaboration with co-inventors at Abgenix, Dr. Boyle and his team used the XenoMouse to create a fully human antibody with superior and surprising qualities. This antibody is known today as denosumab.

71.     Denosumab, the active ingredient in Prolia and XGEVA, is a human IgG2 monoclonal antibody with affinity and specificity for human RANKL.

72.    Denosumab binds to RANKL, preventing it from interacting with RANK. By preventing the RANKL/RANK interaction, denosumab can inhibit osteoclast activation and thus inhibit the breakdown of bone. By administering denosumab to a patient, bone breakdown can be decreased, thereby increasing bone mineral density and reducing the risk of bone fracture.

73.    In 2001, Dr. Boyle and his co-inventors filed U.S. Provisional Patent Application No. 60/301,172 (the "'172 Application"). The Boyle '736 Patent claims priority to the '172 Application. The '172 Application (and the Boyle '736 Patent) discloses and describes denosumab, including the specific heavy and light chain amino acid sequences of denosumab. The specification also discloses the particular heavy chain variable region sequence (SEQ ID NO: 13) and light chain variable region sequence (SEQ ID NO: 14) that form denosumab's antigen binding site and confer its unique binding properties for RANKL. The Boyle '736 Patent claims the denosumab antibody, as well as novel pharmaceutical compositions containing denosumab.

C.    **Amgen's Investment in Prolia and XGEVA**

74.    Today, denosumab is the active ingredient in two medicines that Amgen sells under two different brand names: Prolia and XGEVA. Prolia is indicated for the treatment of osteoporosis and other conditions associated with bone loss. XGEVA is indicated to treat bone cancers and to prevent fractures in cancer patients with bone metastases. On information and belief, the Defendants intend to market biosimilar versions of both products in the United States.

75.    At the time Dr. Boyle and his team were researching biologic treatments for bone loss, osteoporosis treatments largely consisted of bisphosphonates—small molecule (*i.e.*, chemical) drugs that needed to be taken frequently, had significant side effects, and low patient adherence. Few believed that a biologic could achieve a safety and efficacy profile that would make it a successful therapeutic for treating chronic bone loss. Dr. Boyle and his team developed

denosumab and its pharmaceutical composition despite this skepticism and made a surprising discovery: denosumab for osteoporosis (which eventually was named Prolia) needed only to be given to osteoporosis patients every *6 months*, thereby substantially improving patient adherence over existing treatments like bisphosphonates—and clinical trials showed that it was well-tolerated over long-term administration.

76.     Based on the results of extensive clinical testing, Amgen filed Biologic BLA No. 125320 in December 2008. In June 2010, the FDA first approved Prolia (active ingredient denosumab) pursuant to BLA No. 125320, for treating postmenopausal women with osteoporosis at high risk for fracture. Prolia was the first biologic ever approved to treat osteoporosis.

77.     Amgen's subsequent investigations identified additional uses for denosumab, including using denosumab to treat cancer patients. In November 2010, the FDA approved—via a supplement to BLA No. 125320—XGEVA (active ingredient denosumab, formulated in combination with sorbitol and acetate) for the prevention of skeletal-related events in patients with bone metastases from solid tumors. The XGEVA product is administered more frequently, and in higher doses, to patients given the acute nature of the disease being treated (*i.e.*, cancer, such as bone cancer where patients may have an over-expression of RANKL).

78.     Amgen's continued clinical testing revealed that denosumab was safe and effective to treat additional conditions beyond osteoporosis and skeletal-related events (*i.e.*, events that occur due to bone instability) in certain cancer patients. In September 2011, the FDA approved Prolia for the treatment of women at high risk for fracture receiving adjuvant aromatase inhibitor therapy for breast cancer and for the treatment of men at high risk for fracture receiving androgen deprivation therapy for nonmetastatic prostate cancer. In September 2012, the FDA approved Prolia for treatment to increase bone mass in men with osteoporosis at high risk for

fracture. In June 2013, the FDA approved XGEVA for the treatment of adults and skeletally mature adolescents with giant cell tumor of bone. In December 2014, the FDA approved XGEVA for the treatment of hypercalcemia of malignancy refractory to bisphosphonate therapy. In May 2018, the FDA approved Prolia for the treatment of glucocorticoid-induced osteoporosis in men and women at high risk for fracture.

### D.     Amgen's Further Innovations in Antibody Manufacturing

79.     Amgen's further investments in research led to the development of novel manufacturing processes related to denosumab and the larger field of commercial manufacturing of antibody therapeutics for humans. Amgen's efforts in this field yielded advancements in several key areas of manufacturing, such as cell culture and purification methods, to improve and maintain product quality, consistency, safety, and effectiveness. Amgen obtained patent protection over many of these advancements, some of which are reflected in the Patents-in-Suit.

### E.     The Defendants' Knowledge of the Patents-in-Suit

80.     As alleged herein, the Boyle '736 Patent issued on April 29, 2008. The Boyle '736 Patent was identified in Amgen's patent marking for Prolia and XGEVA before Defendants filed their BLA for their denosumab biosimilar product, and before DRL India entered into an agreement with Alvotech Iceland to commercialize AVT03. At least as early as November 7, 2024, most of the Patents-in-Suit, including United States Patent Nos. 7,364,736; 7,888,101; 7,928,205; 8,053,236; 8,058,418; 8,460,896; 8,680,248; 9,012,178; 9,228,168; 9,328,134; 9,359,435; 10,106,829; 10,167,492; 10,227,627; 10,513,723; 10,583,397; 10,822,630; 10,894,972; 11,077,404; 11,098,079; 11,130,980; 11,254,963; 11,299,760; 11,319,568; 11,434,514; 11,459,595; 11,946,085; and 11,952,605 were identified in the FDA's publication entitled *Lists of Licensed Biological Products with Reference Product Exclusivity and Biosimilarity or Interchangeability Evaluation* ("the Purple Book"). Thus, the Defendants had

constructive notice of and were aware of many or all of Amgen's patents before filing their BLA.
*See* 35 U.S.C. § 287.

81.     On information and belief, the Defendants, by nature of being involved in the business of developing and distributing biosimilars, monitor the patent filings and patent ownership of reference product sponsors, including Amgen, and were thus aware of the Patents-in-Suit and their applicability to the Defendants' denosumab biosimilar products before filing their BLA or entering into their commercial relationship related to such denosumab biosimilar products.

82.     Further, as alleged herein, Amgen sent a letter to Defendants identifying the Patents-in-Suit on ██████████. Defendants were thus aware of the Patents-in-Suit at least as of ██████████.

## DEFENDANTS' DISCLOSURES DURING THE BPCIA EXCHANGE, THEIR INTENT TO COMMERCIALIZE, AND THEIR IMPORTATION OF INFRINGING MATERIAL

### A.     The BPCIA's Framework for Confidential Information Exchange

83.     The BPCIA created an abbreviated pathway for the approval of biosimilar versions of approved biologics. Subject to certain conditions, the abbreviated pathway (also known as "the section (k) pathway") permits a biosimilar applicant, here Defendants, to rely on the prior clinical tests, data, and results, and the prior licensure and approval status, of the innovative (or "reference") biological product, here, Prolia and XGEVA, to secure licensing of a biosimilar version of the reference biological product.

84.     The BPCIA provides that "[n]ot later than 20 days after the Secretary notifies the subsection (k) applicant that the application has been accepted for review," the subsection (k) applicant "shall provide to the reference product sponsor [1] a copy of the application submitted to the Secretary under subsection (k), and [2] such other information that describes the process or

processes used to manufacture the biological product that is the subject of such application."

42 U.S.C. § 262(*l*)(2) (numeration added).

85.     The initial disclosure contemplated by section 262(*l*)(2) enables the reference

product sponsor (here, Amgen) to prepare and provide "[n]ot later than 60 days after the receipt

of the application and information under paragraph (2)," "a list of patents for which the reference

product sponsor believes a claim of patent infringement could reasonably be asserted by the

reference product sponsor . . . ." 42 U.S.C. § 262(*l*)(3). This is known colloquially as a "3A

List," and helps facilitate an efficient resolution of patent claims by enabling the product sponsor

to "identify relevant patents and to flesh out the legal arguments that they might raise in future

litigation." *Sandoz v. Amgen*, 582 U.S. 1, 4 (2017).

86.     However, if a subsection (k) applicant (here, Defendants) fails to comply with the

initial disclosure requirements of section 262(*l*)(2)(A) by failing "to provide the application and

information required," then the reference product sponsor (here, Amgen) is permitted to file an

action for declaratory judgment of patent infringement, validity, or enforceability pursuant to

42 U.S.C. § 262(*l*)(9)(C).

87.     In the event the subsection (k) applicant complies with section 262(*l*)(2)(A), and

the reference product sponsor tenders a timely 3A List, the subsection (k) applicant is required to

provide, within 60 days of receiving the 3A List:

> (I)     a detailed statement that describes, on a claim by claim
> basis, the factual and legal basis of the opinion of the
> subsection (k) applicant that such patent [included in
> Amgen's list] is invalid, unenforceable, or will not be
> infringed by the commercial marketing of the biological
> product that is the subject of the subsection (k) application;
> or

(II)     a statement that the subsection (k) applicant does not intend
         to begin commercial marketing of the biological product
         before the date that such patent expires . . . .

42 U.S.C. § 262(*l*)(3)(B)(ii).

88.     This "detailed statement" is colloquially referred to as a "3B Statement." The next

step in the BPCIA's information exchange is for the reference product sponsor to provide, within

60 days, a "3C Statement" responding to the applicant's 3B Statement. 42 U.S.C. § 262(*l*)(3)(C).

**B.     Defendants' Disclosure under Section 262(*l*)(2) of the BPCIA**

89.     Defendants submitted their BLA to the FDA pursuant to 42 U.S.C. § 262(k) in

order to obtain approval to commercially manufacture, offer to sell, sell, and/or import into the

United States Defendants' proposed denosumab biosimilar products. Defendants' BLA

references Amgen's Prolia and XGEVA products bearing BLA license No. 125320.

90.     On information and belief, the FDA accepted for review Defendants' BLA

No. ███████ on ██████████████ .

91.     On ████████████ , Defendants informed Amgen that they were providing a

purported "copy" of their BLA No. ███████ and "████████████████████████████

████████████████████████████████████████████████████████████████████████████"

Because Defendants' BLA was accepted for review on ████████████ , the last day for

Defendants to comply with the requirements of section 262(*l*)(2)(A) or otherwise trigger the

provisions of section 262(*l*)(9) was ████████████ .

92.     Upon reviewing Defendants' ████████████ production, Amgen determined that

Defendants had failed to include ████████████████████████████████████████████

████████████████████████████████████████████ , as required by section 262(*l*)(2).

93.     Outside of the partial BLA reproduction, Defendants' ████████████ production

████████████████████████████████████████████████████████████████████████████



94.     Defendants knew or should have known that these topics were relevant because, by [REDACTED], the Purple Book listed over 50 patents for Prolia and XGEVA—many of which relate to the identified topics—and Amgen had filed suit under the BPCIA against five other developers of denosumab biosimilars—again, asserting patents which relate to the identified topics. Thus, by the time Defendants sought to invoke the BPCIA exchange procedures, Defendants knew (or should have known) that patents that would likely be relevant to such an exchange would require disclosure of "such other information that describes the process or processes used to manufacture the biological product" under section 262($l$)(2)(A) that included information relating to the identified topics, not least because the information would be relevant to evaluating infringement of patents of which Defendants were already aware. For example, many of the Purple Book-listed patents and those in suit in prior patent cases involving denosumab require certain components at specific concentrations to be added to or included in

the cell culture media.[11] To evaluate infringement of these patents, information is needed on the complete composition of cell culture media and feed media, or any other medium or solution used, in the cell culture process for AVT03 along with the concentrations of the components in the cell culture (or information sufficient to determine such concentrations). Other Purple Book-listed patents, likewise in suit in prior denosumab cases, specify product attributes during and after the manufacturing process that can be demonstrated through SEC-HPLC and nrCE-SDS testing,[12] or specify flow rates through filters at various timepoints throughout the downstream manufacturing process.[13]

95.    Nevertheless, Defendants' production on ██████████ omitted such information regarding AVT03 that would have enabled Amgen to achieve a complete understanding of Defendants' manufacturing processes, which (as Defendants knew or should have known) is necessary for Amgen to meaningfully participate in the pre-litigation exchange and negotiation contemplated by the BPCIA.

96.    On information and belief, Defendants' ██████████ production withheld



---

[11] Those patents include, but are not limited to, the Morris '236, Kang '178, Morris '168, Allen '134, Wu '435, Leiske '492, Kang '723, Leiske '630, Huang '972, Pande '980, Kang '963, Pande '760, Wu '568, Huang '514, Wu '595, Huang '085, Wu '605, and Crowell '686 patents.

[12] Those patents include, but are not limited to, the Hoang '079 and Dillon '205 patents.

[13] Those patents include, but are not limited to, the Gefroh '397 and Gefroh '404 patents.

97.     On information and belief, Defendants, as BLA applicants and manufacturers of biosimilar products, are aware of the categories of information that are essential to "describe" the processes developed and implemented to manufacture their proposed denosumab biosimilar, having had access to the wealth of public information regarding Amgen's patents for Prolia and XGEVA and Amgen's BPCIA lawsuits concerning denosumab biosimilars. Defendants' failure to provide on █████████ "such other information" that "describes" the manufacturing process(es) for AVT03 in a manner that, on information and belief, Defendants knew would be necessary to facilitate a meaningful exchange under the BPCIA violates section 262(*l*)(2)'s requirement that Defendants produce "such other information" within 20 days of the FDA's acceptance of their BLA.

98.     Without the provision of information that describes the process or processes used to manufacture the biological product that is the subject of Defendants' BLA, Amgen was unable to fully evaluate whether a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States AVT03.

99.     In the months following Defendants' deficient █████████ production, Amgen sought to engage Defendants to produce the manufacturing information that should have been provided within 20 days of the FDA accepting their BLA for review. On █████████, Amgen sent Defendants a deficiency letter identifying missing information concerning the process used to manufacture AVT03. Defendants responded on █████████ declining to provide any additional information regarding its manufacturing processes for AVT03 and "████████ ███████████████████████████████████████████████████████"

100.    Amgen sent an additional deficiency letter on ███████, again requesting Defendants "████████████████████████████████████████████ ████████████████████████████████████████████████

101.    After conducting an analysis to the best of its ability based on the limited information provided, Amgen delivered to Defendants on ███████ a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of Defendants' BLA is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen. In this letter, Amgen maintained its position that Defendants had not complied with section 262(*l*)(2)(A). All of the Patents-in-Suit were identified in Amgen's ████████ letter and could have been identified in Amgen's list pursuant to section 262(*l*)(3)(A) had Defendants complied with section 262(*l*)(2)(A).

102.    Amgen's efforts to resolve the deficiencies in Defendants' ████████ production continued into ████████, when it again asked Defendants to supplement their production with "███████████████████████" that Amgen had previously identified to Defendants and for which Defendants should have been on notice given the wealth of public information regarding Amgen's patents for Prolia and XGEVA and other BPCIA lawsuits concerning denosumab biosimilars. Amgen emphasized that "██████████████████████████████ ████████████████ due to Defendants' insufficient ██████████████ production. Amgen's ████████ letter specifically noted that "████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████

28

103.     Amgen's efforts to secure manufacturing information continued through ███. In a ████ letter, Defendants ████████████████████ ██████████████████████ ██████████████████████ ██████████████████. Then, on █████, Defendants tendered to Amgen a purported "████" in response to Amgen's ██████ letter. This letter █████████████████████ ████ failed to provide Amgen sufficient information to meaningfully evaluate Defendants' initial positions on the patents included in the list Amgen rendered on ████ ██.

104.     Amgen continued to seek missing information into ██████████. When Defendants finally supplemented their production in ██████████, Amgen received a total of ten documents over two productions. Neither production rectified the deficiencies that Amgen had first identified on ████████, and both were made well after Defendants' ██ deadline to comply with section 262($l$)(2)(A) of the BPCIA. There is no provision of the BPCIA for retroactive compliance with section 262($l$)(2)(A).

105.     Nevertheless, on ████████████, Amgen responded to Defendants' ████ ████████" and provided Defendants with the factual and legal basis of Amgen's opinion that each patent identified in Amgen's ██████ letter has been or will be infringed by Defendants' proposed denosumab biosimilar products. Amgen maintained its position that Defendants had, by withholding information, necessarily limited Amgen's ability to fully assess patent infringement.

106.    On ███████████, Defendants sought to schedule a meeting, purportedly to begin negotiations pursuant to section 262(*l*)(4)(A). However, such negotiations cannot be meaningfully pursued, nor are they required, when the applicant fails to provide the full scope of information contemplated by section 262(*l*)(2)(A), as Defendants have failed to do here.

107.    Despite Defendants' failure to comply with section 262(*l*)(2)(A), Amgen has participated in the pre-litigation exchange contemplated under the BPCIA to the best of its ability in the spirit of potentially narrowing disputes between the parties. Amgen's efforts, however, have been frustrated by Defendants' failure to comply with section 262(*l*)(2)(A) of the BPCIA and their subsequent and continued refusal to redress the deficiencies Amgen identified. Defendants' failure to produce the "other" manufacturing information required by subsection 262(*l*)(2)(A) has and will continue to prejudice Amgen's efforts to conduct a complete patent infringement analysis.

108.    Defendants' failure to comply with section 262(*l*)(2)(A) authorizes Amgen to file an action for declaratory judgment of patent infringement, validity, or enforceability. *See* 42 U.S.C. § 262(*l*)(9)(C).

109.    On information and belief, Defendants' proposed denosumab biosimilar products are manufactured by methods that utilize Amgen inventions covering various manufacturing processes, and on information and belief, Defendants, alone or in concert with others acting on behalf of Defendants or their affiliates, will manufacture these proposed denosumab biosimilar products. The full extent of Defendants' utilization of Amgen's patented manufacturing processes cannot yet be ascertained because of Defendants' continued failure to provide complete information.

C.    **Defendants' Intent to Commercialize Before the Patents-in-Suit Expire**

110.    The FDA has stated publicly that the agency's goal is to act on the majority of subsection (k) applications within 10 months of an application's 60-day filing date.[14] This 10-month date is sometimes called a "BsUFA III date," which is an abbreviation for Biosimilar User Fee Act III date. According to DRL India's 6-K filing with the SEC dated March 18, 2025, "[t]he FDA's filing acceptance of Dr. Reddy's proposed denosumab biosimilar marks an important milestone in bringing this biosimilar medication to more patients throughout the U.S." ██

████████████████████████████████████████████████████████████

█████████████████████████████████████,[15] which is before the expiration of one or more of the Patents-in-Suit.

111.    Therefore, on information and belief, Defendants have engaged, intend to engage, and will imminently engage in the use, offer for sale, and sale in the United States, and importation into the United States, of one or more of their proposed denosumab biosimilar products before the expiration of the Patents-in-Suit.

D.    **Defendants' Importation of Infringing Material**

112.    On information and belief, Defendants, acting in concert with their affiliates, have imported into and/or will import into the United States Defendants' proposed denosumab

---

[14] *See* US FDA, *Biosimilar Biological Product Reauthorization Performance Goals and Procedures Fiscal Years 2023 through 2027*, https://www.fda.gov/media/152279/download?attachment (last accessed Nov. 5, 2025) ("Review performance goals . . . Review and act on 90 percent of original 351(k) BLA submissions within 10 months of the 60 day filing date."); *see also* US FDA, *BsUFA III: Fiscal Years 2023–2027*, https://www.fda.gov/industry/biosimilar-user-fee-amendments/bsufa-iii-fiscal-years-2023-2027 (last accessed Nov. 5, 2025).

[15] *See* Alvotech, *Alvotech and Dr. Reddy's Announce FDA acceptance of Biologic License Application for AVT03, a proposed Biosimilar to Prolia® and XGEVA®* (March 18, 2025), https://www.sec.gov/Archives/edgar/data/1898416/000117184325001514/exh_991.htm (last accessed Nov. 5, 2025).

biosimilar product(s). The full extent of Defendants' importation of denosumab products cannot yet be ascertained due to Defendants' failure to provide complete information.

113.    According to the publicly available FDA Dashboard, Alvotech Iceland has imported at least three shipments of infringing products from Iceland into the United States.[16] On March 31, 2023, Alvotech Iceland imported two shipments from Iceland into the United States that were labeled "DENOSUMAB MONOCLONAL ANTIBODIES."[17] On July 28, 2023, Alvotech Iceland imported one shipment from Iceland into the United States labeled "DENOSUMAB MONOCLONAL ANTIBODIES."[18]

114.    According to the publicly available FDA Dashboard, "Dr. Reddy's Laboratories" has imported at least one shipment of infringing products from India into the United States.[19] On information and belief, "Dr. Reddy's Laboratories" refers to DRL India. On September 1, 2025, on information and belief, DRL India imported one shipment from India into the United States that was labeled "DENOSUMAB."[20]

---

[16] *See, e.g.*, US FDA, *FDA Data Dashboard*, https://datadashboard.fda.gov/ora/cd/impentry-table.htm (using search with "Alvotech" as the Manufacturer Legal Name, and selecting "Download Dataset") (last accessed Nov. 5, 2025).

[17] *See, e.g.*, US FDA, *FDA Data Dashboard*, Entry No.: BUP-1697137-9, https://www.access.fda.gov/itacs/#/ (using search for Entry Number "BUP-1697137-9") (last accessed Nov. 5, 2025).

[18] *See, e.g.*, US FDA, *FDA Data Dashboard*, Entry No. BUP-1731400-9, https://www.access.fda.gov/itacs/#/ (using search for Entry Number "BUP-1731400-9") (last accessed Nov. 5, 2025).

[19] *See, e.g.*, US FDA, *FDA Data Dashboard*, https://datadashboard.fda.gov/ora/cd/impentry-table.htm (using search with "Dr. Reddy's Laboratories" as the Manufacturer Legal Name, and selecting "Download Dataset") (last accessed Nov. 5, 2025).

[20] *See, e.g.*, US FDA, *FDA Data Dashboard*, Entry No.: BUP-1697137-9, https://www.access.fda.gov/itacs/#/ (using search for Entry Number "AEK-7754760-0") (last accessed Nov. 5, 2025).

115.    On information and belief, Defendants have not conducted a clinical trial for their denosumab biosimilar in the United States.

116.    Furthermore, on information and belief, Defendants, acting in concert with others, including ██████████████████, have imported into the United States and made and used in the United States ████████████████. According to Defendants' submissions to the FDA, ████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

## THE PATENTS-IN-SUIT

### A.  The Allen '134 Patent

117.    The USPTO duly and legally issued the Allen '134 Patent, titled "Carbohydrate Phosphonate Derivatives and Modulators of Glycosylation" on May 3, 2016. The Allen '134 Patent as a general matter discloses and claims compounds useful for modulating glycosylation.

118.    The Allen '134 Patent is assigned to Amgen Inc. AML has a license to the Allen '134 Patent that is exclusive with respect to Prolia and XGEVA. The Allen '134 Patent was identified in the letter Amgen Inc. sent to Defendants on ████████████ as a patent for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

### B.  The Boyle '736 and '418 Patents

119.    The United States Patent and Trademark Office ("USPTO") duly and legally issued the Boyle '736 Patent, titled "Antibodies to OPGL," on April 29, 2008. The Boyle '736

Patent discloses and claims denosumab. The Boyle '736 Patent is and has been identified on the label for XGEVA and Prolia.[21]

120.    The United States Patent and Trademark Office ("USPTO") duly and legally issued the Boyle '418 Patent titled "Polynucleotides encoding heavy and light chains of antibodies to OPGL," on November 15, 2011. The Boyle '418 Patent discloses and claims denosumab. The Boyle '418 Patent is and has been identified on the label for XGEVA and Prolia.

121.    The Boyle '736 and '418 Patents are assigned to Amgen Inc. AML has a license to the Boyle '736 and '418 Patents that is exclusive with respect to Prolia and XGEVA. The Boyle '736 and '418 Patents were identified in the letter Amgen Inc. sent to Defendants on ███ ██████ as a patent for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

**C.    The Crowell '248, '896, and '101 Patents**

122.    The USPTO duly and legally issued the Crowell '248 Patent, titled "Host Cells Comprising Alpha 1,2 Mannosidase and Culture Methods Thereof," on March 25, 2014. The Crowell '248 Patent as a general matter discloses and claims a glycoprotein product produced by a process of culturing an isolated host cell engineered to overexpress alpha 1,2 mannosidase native to the host cell, and a glycoprotein of interest.

123.    The USPTO duly and legally issued the Crowell '896 Patent, titled "Host Cells and Culture Methods," on June 11, 2013. The Crowell '896 Patent as a general matter discloses

---

[21] *See* https://pat.amgen.com/pdf/pat.amgen.com_Prolia.pdf ('736 Patent listed in "Version 2023.03.03"); https://pat.amgen.com/pdf/pat.amgen.com_Xgeva.pdf (same) (last accessed Nov. 5, 2025).

and claims methods of producing glycoproteins of interest by culturing an isolated host cell engineered to overexpress alpha 1,2 mannosidase native to the host cell, and a glycoprotein of interest.

124.    The USPTO duly and legally issued the Crowell '101 Patent, titled "Host Cells Comprising Alpha 1,2 Mannosidase and Culture Methods Thereof," on February 15, 2011. The Crowell '101 Patent as a general matter discloses and claims methods of producing glycoproteins of interest by culturing an isolated host cell engineered to overexpress alpha 1,2 mannosidase native to the host cell, and a glycoprotein of interest.

125.    The Crowell '248, Crowell '896, and Crowell '101 Patents are assigned to Amgen Inc. AML has a license to the Crowell '248, Crowell '896, and Crowell '101 Patents that is exclusive with respect to Prolia and XGEVA. The Crowell '248, Crowell '896, and Crowell '101 Patents were identified in the letter Amgen Inc. sent to Defendants on ███████ as patents for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

**D.    The Crowell '686 Patent**

126.    The USPTO duly and legally issued the Crowell '686 Patent titled "Antibodies with modulated glycan profiles," on September 10, 2024. The Crowell '686 Patent as a general matter discloses and claims methods for modulating glycan profiles of denosumab molecules.

127.    The Crowell '686 Patent is assigned to Amgen Inc. AML has a license to the Crowell '686 Patent that is exclusive with respect to Prolia and XGEVA. The Crowell '686 Patent was identified in the letter Amgen Inc. sent to Defendants on ███████ as patents for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if

Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

###### E.   The Dillon '205 Patent

128.    The USPTO duly and legally issued the Dillon '205 Patent, titled "Methods for Refolding of Recombinant Antibodies," on April 19, 2011. The Dillon '205 Patent as a general matter discloses and claims methods of producing IgG2 antibodies by using a reduction/oxidation coupling reagent and optionally a chaotropic agent.

129.    The Dillon '205 Patent is assigned to Amgen Inc. AML has a license to the Dillon '205 Patent that is exclusive with respect to Prolia and XGEVA. The Dillon '205 Patent was identified in the letter Amgen Inc. sent to Defendants on ███████ as a patent for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

###### F.   The Huang '972, '514, and '085 Patents

130.    The USPTO duly and legally issued the Huang '972 Patent, titled "Methods for Increasing Mannose Content of Recombinant Proteins" on January 19, 2021. The Huang '972 Patent as a general matter discloses and claims methods of influencing the high mannose glycoform content of a recombinant protein during a mammalian cell culture by adding mannose sugars after establishing the cell culture, and manipulating the mannose to total hexose ratio in the cell culture and feed media.

131.    The USPTO duly and legally issued the Huang '514 Patent, titled "Methods for Increasing Mannose Content of Recombinant Proteins" on September 6, 2022. The Huang '514 Patent as a general matter discloses and claims methods of influencing the high mannose glycoform content of denosumab during a mammalian cell culture by adding mannose sugars

during a production phase and manipulating the mannose to total hexose ratio in the cell culture and feed media.

132.    The USPTO duly and legally issued the Huang '085 Patent, titled "Methods for Increasing Mannose Content of Recombinant Proteins," on April 2, 2024. The Huang '085 Patent as a general matter discloses and claims methods for controlling mannose-5 glycoform content of denosumab molecules by adding mannose and glucose sugars and manipulating the mannose to total hexose ratio in the cell culture media.

133.    The Huang '972, Huang '514, and Huang '085 Patents are assigned to Amgen Inc. AML has a license to the Huang '972, Huang '514, and Huang '085 Patents that is exclusive with respect to Prolia and XGEVA. The Huang '972, Huang '514, and Huang '085 Patents were identified in the letter Amgen Inc. sent to Defendants on █████████ as patents for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

**G.    The Gupta '829 and '627 Patents**

134.    The USPTO duly and legally issued the Gupta '829 Patent, titled "Overexpression of N-Glycosylation Pathway Regulators to Modulate Glycosylation of Recombinant Proteins," on October 23, 2018. The Gupta '829 Patent as a general matter discloses and claims methods of regulating the high mannose glycoform content of recombinant proteins during a mammalian cell culture process.

135.    The USPTO duly and legally issued the Gupta '627 Patent, titled "Overexpression of N-Glycosylation Pathway Regulators to Modulate Glycosylation of Recombinant Proteins," on March 12, 2019. The Gupta '627 Patent as a general matter discloses and claims methods of

regulating the high mannose glycoform content of recombinant proteins during a mammalian cell culture process.

136.    The Gupta '829 and Gupta '627 Patents are assigned to Amgen Inc. AML has a license to the Gupta '829 and Gupta '627 Patents that is exclusive with respect to Prolia and XGEVA. The Gupta '829 and Gupta '627 Patents were identified in the letter Amgen Inc. sent to Defendants on ███████████ as patents for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

### H.    The Kang '723 and '963 Patents

137.    The USPTO duly and legally issued the Kang '723 Patent, titled "Decreasing Ornithine Production to Decrease High Mannose Glycoform Content of Recombinant Proteins," on December 24, 2019. The Kang '723 Patent as a general matter discloses and claims methods of influencing the high mannose glycoform content of a recombinant protein.

138.    The USPTO duly and legally issued the Kang '963 Patent, titled "Increasing Ornithine Accumulation to Increase High Mannose Glycoform Content of Recombinant Proteins," on February 22, 2022. The Kang '963 Patent as a general matter discloses and claims methods of influencing the high mannose glycoform content of a recombinant protein.

139.    The Kang '723 and Kang '963 Patents are assigned to Amgen Inc. AML has a license to the Kang '723 and Kang '963 Patents that is exclusive with respect to Prolia and XGEVA. The Kang '723 and Kang '963 Patents were identified in the letter Amgen Inc. sent to Defendants on ███████████ as a patent for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering

to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

## I.    <u>The Kang '178 Patent</u>

140.    The USPTO duly and legally issued the Kang '178 Patent, titled "Dipeptides to Enhance Yield and Viability from Cell Cultures," on April 21, 2015. The Kang '178 Patent as a general matter discloses and claims particular dipeptides that can improve recombinant protein production and cell viability in cell cultures.

141.    The Kang '178 Patent is assigned to Amgen Inc. AML has a license to the Kang '178 Patent that is exclusive with respect to Prolia and XGEVA. The Kang '178 Patent was identified in the letter Amgen Inc. sent to Defendants on ███████ as patents for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

## J.    <u>The Gefroh '397 and '404 Patent</u>

142.    The USPTO duly and legally issued the Gefroh '397 Patent, titled "Process Control Systems and Methods for Use with Filters and Filtration Processes," on March 10, 2020. The Gefroh '397 Patent as a general matter discloses and claims systems and methods used to control flow filtration in the production and/or purification of recombinant proteins.

143.    The USPTO duly and legally issued the Gefroh '404 Patent, titled "Process control systems and methods for use with filters and filtration processes," on August 3, 2021. The Gefroh '404 Patent as a general matter discloses and claims systems and methods used to control flow filtration in the production and/or purification of recombinant proteins.

144.    The Gefroh '397 and Gefroh '404 Patents are assigned to Amgen Inc. AML has a license to the Gefroh '397 and Gefroh '404 Patents that is exclusive with respect to Prolia and

XGEVA. The Gefroh '397 and Gefroh '404 Patents were identified in the letter Amgen Inc. sent to Defendants on ██████████ as patents for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

### K.    The Hoang '079 Patent

145.    The USPTO duly and legally issued the Hoang '079 Patent, titled "Charging Depth Filtration of Antigen-Binding Proteins," on August 24, 2021. The Hoang '079 Patent as a general matter discloses and claims methods of using a charged depth filter to purify an antigen-binding protein.

146.    The Hoang '079 Patent is assigned to Amgen Inc. AML has a license to the '079 Patent that is exclusive with respect to Prolia and XGEVA. The Hoang '079 Patent was identified in the letter Amgen Inc. sent to Defendants on ██████████ as a patent for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

### L.    The Trejo '919 and '372 Patents

147.    The USPTO duly and legally issued the Trejo '919 Patent, titled "Removal of Leaked Affinity Purification Ligand," on December 7, 2021. The Trejo '919 Patent as a general matter discloses and claims methods for purifying a recombinant protein from a sample containing the recombinant protein and a second protein that binds to the protein, using a tentacle anion exchange matrix chromatography medium.

148.    The USPTO duly and legally issued the Trejo '372 Patent, titled "Removal of Leaked Affinity Purification Ligand," on November 8, 2022. The Trejo '372 Patent as a general

matter discloses and claims methods for purifying an antibody from a sample containing the antibody and a second protein that binds to the antibody, using a tentacle anion exchange matrix chromatography medium.

149.    The Trejo '919 and Trejo '372 Patents are assigned to Amgen Inc. AML has a license to the Trejo '919 and Trejo '372 Patents that is exclusive with respect to Prolia and XGEVA. The Trejo '919 and Trejo '372 Patents were identified in the letter Amgen Inc. sent to Defendants on ███████████ as patents for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

**M.    The Leiske '492 and '630 Patents**

150.    The USPTO duly and legally issued the Leiske '492 Patent, titled "Process for Manipulating the Level of Glycan Content of a Glycoprotein" on January 1, 2019. The Leiske '492 Patent as a general matter discloses and claims a method for manipulating the fucosylated glycan content on a recombinant protein.

151.    The USPTO duly and legally issued the Leiske '630 Patent, titled "Process for Manipulating the Level of Glycan Content of a Glycoprotein" on November 3, 2020. The Leiske '630 Patent as a general matter discloses and claims a method for manipulating the fucosylated glycan content on a recombinant protein.

152.    The Leiske '492 and '630 Patents are assigned to Amgen Inc. AML has a license to the Leiske '492 and '630 Patents that is exclusive with respect to Prolia and XGEVA. The Leiske '492 and Leiske '630 Patents were identified in the letter Amgen Inc. sent to Defendants on ███████████ as patents for which Amgen Inc. believes a claim of patent infringement could

reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

### N.    The Morris '236 and '168 Patents

153.    The USPTO duly and legally issued the Morris '236 Patent, titled "Feed Media," on November 8, 2011. The Morris '236 Patent as a general matter discloses and claims feed media and methods for stabilizing feed media, where the feed media contains certain concentrations of particular components.

154.    The USPTO duly and legally issued the Morris '168 Patent, titled "Feed media," on January 5, 2016. The Morris '168 Patent as a general matter discloses and claims methods for stabilizing feed media for culturing mammalian cells by adding pyruvate.

155.    The Morris '236 and Morris '168 Patents are assigned to Amgen Inc. AML has a license to the Morris '236 and Morris '168 Patents that is exclusive with respect to Prolia and XGEVA. The Morris '236 and Morris '168 Patents were identified in the letter Amgen Inc. sent to Defendants on ████████ as patents for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, or importing into the United States of Defendants' proposed denosumab biosimilar products.

### O.    The Pande '980 and '760 Patents

156.    The USPTO duly and legally issued the Pande '980 Patent, titled "Use of Monensin to Regulate Glycosylation of Recombinant Proteins" on September 28, 2021. The Pande '980 Patent as a general matter discloses and claims methods of modulating high mannose glycoform content of a protein in a cell culture by contacting the cells expressing the protein with monensin.

157.    The USPTO duly and legally issued the Pande '760 Patent, titled "Use of Monensin to Regulate Glycosylation of Recombinant Proteins" on April 12, 2022. The Pande '760 Patent as a general matter discloses and claims methods of modulating the properties of a cell culture expressing a protein of interest with various embodiments relating to the addition of cell-cycle inhibitors to growing cell cultures.

158.    The Pande '980 and '760 Patents are assigned to Amgen Inc. AML has a license to the Pande '980 and '760 Patents that is exclusive with respect to Prolia and XGEVA. The Pande '980 and Pande '760 Patents were identified in the letter Amgen Inc. sent to Defendants on ▮▮▮▮▮▮ as patents for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

**P.    The Wu '435 Patent**

159.    The USPTO duly and legally issued the Wu '435 Patent, titled "Methods for Modulating Mannose Content of Recombinant Proteins," on June 7, 2016. The Wu '435 Patent as a general matter discloses and claims methods of modulating the high-mannose glycoform content of a recombinant protein during a mammalian cell culture.

160.    The Wu '435 Patent is assigned to Amgen Inc. AML has a license to the Wu '435 Patent that is exclusive with respect to Prolia and XGEVA. The Wu '435 Patent was identified in the letter Amgen Inc. sent to Defendants on ▮▮▮▮▮▮ as a patent for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

Q.    **The Wu '568, '595, and '605 Patents**

161.    The USPTO duly and legally issued the Wu '568 Patent, titled "Methods for Increasing Mannose Content of Recombinant Proteins," on May 3, 2022. The Wu '568 Patent as a general matter discloses and claims methods for modulating mannose 5 on recombinant proteins during a mammalian cell culture process.

162.    The USPTO duly and legally issued the Wu '595 Patent, titled "Methods for Increasing Mannose Content of Recombinant Proteins," on October 4, 2022. The Wu '595 Patent as a general matter discloses and claims methods for modulating mannose 5 on an immunoglobulin molecule during a mammalian cell culture process.

163.    The USPTO duly and legally issued the Wu '605 Patent, titled "Methods for Increasing Mannose Content of Recombinant Proteins," on April 9, 2024. The Wu '605 Patent as a general matter discloses and claims methods of modulating the amount of the mannose-5 glycoform of an IgG2 molecule in an IgG2 composition, as well as methods of producing IgG2 compositions, by a Chinese Hamster Ovary cell culture.

164.    The Wu '568, Wu '595, and Wu '605 Patents are assigned to Amgen Inc. AML has a license to the Wu '568, Wu '595, and Wu '605 Patents that is exclusive with respect to Prolia and XGEVA. The Wu '568, Wu '595, and Wu '605 Patents were identified in the letter Amgen Inc. sent to Defendants on ▮▮▮▮▮▮ as patents for which Amgen Inc. believes a claim of patent infringement could reasonably be asserted if Defendants engaged in the making, using, offering to sell, selling, or importing into the United States of Defendants' proposed denosumab biosimilar products.

**COUNT 1: INFRINGEMENT OF THE ALLEN '134 PATENT**

165.    Paragraphs 1–164 are incorporated by reference as if fully set forth herein.

166.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Allen '134 Patent has been or will be infringed, the Defendants have infringed the Allen '134 Patent under at least 35 U.S.C. §§ 271 (b), (e), and (g).

167.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Allen '134 Patent, including at least claim 35.

168.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Allen '134 Patent, including at least claim 35, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

169.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Allen '134 Patent, including at least claim 35. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the

United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Allen '134 Patent, constitutes willful infringement.

170.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Allen '134 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

171.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Allen '134 Patent.

## COUNT 2: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE ALLEN '134 PATENT

172.    Paragraphs 1–171 are incorporated by reference as if fully set forth herein.

173.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Allen '134 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Allen '134 Patent, including at least claim 35, under at least 35 U.S.C. §§ 271 (b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed denosumab biosimilar products before expiration of the Allen '134 Patent, or will actively induce such activities.

174.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either

46

literally or under the doctrine of equivalents, one or more claims of the Allen '134 Patent, including at least claim 35, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

175.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Allen '134 Patent, will infringe one or more claims of the Allen '134 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

176.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Allen '134 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Allen '134 Patent.

177.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Allen '134 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing into the United States, Defendants' denosumab biosimilar products before the expiration of the Allen '134 Patent.

## COUNT 3: INFRINGEMENT OF THE BOYLE '736 PATENT

178.    Paragraphs 1–177 are incorporated by reference as if fully set forth herein.

179.     Based on information presently available to Amgen, Defendants have infringed the Boyle '736 Patent under at least 35 U.S.C. §§ 271(a) and (b).

180.     On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Boyle '736 Patent, including at least claim 3.

181.     On information and belief, Defendants' proposed denosumab biosimilar products infringe, either literally or under the doctrine of equivalents, one or more claims of the Boyle '736 Patent, including at least claim 3.

182.     On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Boyle '736 Patent, including at least claim 3. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Boyle '736 Patent, constitutes willful infringement.

183.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Boyle '736 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

### COUNT 4: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE BOYLE '736 PATENT

184.    Paragraphs 1–183 are incorporated by reference as if fully set forth herein.

185.    Based on information presently available to Amgen, on information and belief, the Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Boyle '736 Patent, including at least claim 3, under at least 35 U.S.C. §§ 271(a) and (b). On information and belief, Defendants have imported into the United States, or, used, offered for sale, or sold within the United States, one or more of Defendants' proposed denosumab biosimilar products before expiration of the Boyle '736 Patent.

186.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Boyle '736 Patent, infringes one or more claims of the Boyle '736 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

187.    Amgen is entitled to a declaratory judgment that Defendants infringed one or more claims of the Boyle '736 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Boyle '736 Patent.

49

## COUNT 5: INFRINGEMENT OF THE BOYLE '418 PATENT

188.    Paragraphs 1–187 are incorporated by reference as if fully set forth herein.

189.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Boyle '418 Patent has been or will be infringed, the Defendants have infringed the Boyle '418 Patent under at least 35 U.S.C. §§ 271(a), (b), and (g).

190.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Boyle '418 Patent, including at least claim 14.

191.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past import of denosumab from Iceland into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Boyle '418 Patent, including at least claim 14. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Boyle '418 Patent, constitutes willful infringement.

192.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Boyle '418 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

## COUNT 6: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE BOYLE '418 PATENT

193.    Paragraphs 1–192 are incorporated by reference as if fully set forth herein.

194.    Based on information presently available to Amgen, on information and belief, the Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Boyle '418 Patent, including at least claim 14, under at least 35 U.S.C. §§ 271(a), (b), and (g).

195.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Boyle '418 Patent, infringed one or more claims of the Boyle '418 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

196.    Amgen is entitled to a declaratory judgment that Defendants infringed one or more claims of the Boyle '418 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Boyle '418 Patent.

## COUNT 7: INFRINGEMENT OF THE CROWELL '248 PATENT

197.    Paragraphs 1–196 are incorporated by reference as if fully set forth herein.

198.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to

fully evaluate whether the Crowell '248 Patent has been or will be infringed, the Defendants have infringed the Crowell '248 Patent under at least 35 U.S.C. §§ 271(a), (b), (e), and (g).

199.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '248 Patent, including at least claim 1.

200.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '248 Patent, including at least claim 1, and Defendants' denosumab is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

201.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '248 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Crowell '248 Patent, constitutes willful infringement.

202.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Crowell '248 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

203.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Crowell '248 Patent.

## COUNT 8: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE CROWELL '248 PATENT

204.    Paragraphs 1–203 are incorporated by reference as if fully set forth herein.

205.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Crowell '248 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '248 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(a), (b), and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed denosumab biosimilar products before expiration of the Crowell '248 Patent, or will actively induce such activities.

206.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '248 Patent,

including at least claim 1, and Defendants' denosumab is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

207.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Crowell '248 Patent, will infringe one or more claims of the Crowell '248 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

208.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Crowell '248 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Crowell '248 Patent.

209.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Crowell '248 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing into the United States, Defendants' denosumab biosimilar products before the expiration of the Crowell '248 Patent.

### COUNT 9: INFRINGEMENT OF THE CROWELL '896 PATENT

210.    Paragraphs 1–209 are incorporated by reference as if fully set forth herein.

211.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to

fully evaluate whether the Crowell '896 Patent has been or will be infringed, the Defendants have infringed the Crowell '896 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

212.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '896 Patent, including at least claim 1.

213.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '896 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

214.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '896 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active

inducement thereof, despite knowledge of the Crowell '896 Patent, constitutes willful infringement.

215.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Crowell '896 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

216.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Crowell '896 Patent.

## COUNT 10: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE CROWELL '896 PATENT

217.    Paragraphs 1–216 are incorporated by reference as if fully set forth herein.

218.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Crowell '896 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '896 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed denosumab biosimilar products before expiration of the Crowell '896 Patent, or will actively induce such activities.

219.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either

literally or under the doctrine of equivalents, one or more claims of the Crowell '896 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

220.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Crowell '896 Patent, will infringe one or more claims of the Crowell '896 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

221.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Crowell '896 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Crowell '896 Patent.

222.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Crowell '896 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing into the United States, Defendants' denosumab biosimilar products before the expiration of the Crowell '896 Patent.

## COUNT 11: INFRINGEMENT OF THE CROWELL '101 PATENT

223.    Paragraphs 1–222 are incorporated by reference as if fully set forth herein.

224.    Based on information presently available to Amgen, and in view of Defendants'
failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to
fully evaluate whether the Crowell '101 Patent has been or will be infringed, the Defendants
have infringed or will infringe the Crowell '101 Patent under at least 35 U.S.C. §§ 271(a), (b),
(e), and (g).

225.    On information and belief, based on information presently available to Amgen,
the submission of Defendants' BLA to obtain FDA approval to engage in the commercial
manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants'
proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of
infringement, either literally or under the doctrine of equivalents, of one or more claims of the
Crowell '101 Patent, including at least claims 1 and 15.

226.    On information and belief, Defendants' proposed denosumab biosimilar products
and manufacturing process infringe, either literally or under the doctrine of equivalents, one or
more claims of the Crowell '101 Patent, including at least claims 1 and 15, and the denosumab
made by that process is the essential active ingredient of Defendants' proposed denosumab
biosimilar products.

227.    On information and belief, based on information presently available to Amgen,
including information from the FDA Dashboard pertaining to Defendants' past imports of
denosumab from Iceland and India into the United States, Defendants' importation into,
commercial manufacture, sale, offer for sale, or use within the United States of one or more of
Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,
constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or
more claims of the Crowell '101 Patent, including at least claims 1 and 15. On information and

belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Crowell '101 Patent, constitutes willful infringement.

228.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Crowell '101 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

229.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Crowell '101 Patent.

## COUNT 12: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE CROWELL '101 PATENT

230.    Paragraphs 1–229 are incorporated by reference as if fully set forth herein.

231.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Crowell '101 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '101 Patent, including at least claims 1 and 15, under at least 35 U.S.C. §§ 271(a), (b), and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed denosumab biosimilar products before expiration of the Crowell '101 Patent, or will actively induce such activities.

232.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '101 Patent, including at least claims 1 and 15, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

233.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Crowell '101 Patent, will infringe one or more claims of the Crowell '101 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

234.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Crowell '101 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Crowell '101 Patent.

235.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Crowell '101 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing into the United States, Defendants' denosumab biosimilar products before the expiration of the Crowell '101 Patent.

## COUNT 13: INFRINGEMENT OF THE CROWELL '686 PATENT

236.    Paragraphs 1–235 are incorporated by reference as if fully set forth herein.

237.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Crowell '686 Patent has been or will be infringed, the Defendants have infringed the Crowell '686 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

238.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '686 Patent, including at least claim 1.

239.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '686 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

240.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '686 Patent, including at least claim 1. On information and belief,

Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Crowell '686 Patent, constitutes willful infringement.

241.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Crowell '686 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

242.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Crowell '686 Patent.

## COUNT 14: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE CROWELL '686 PATENT

243.    Paragraphs 1–242 are incorporated by reference as if fully set forth herein.

244.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Crowell '686 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '686 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed denosumab biosimilar products before expiration of the Crowell '686 Patent, or will actively induce such activities.

245.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '686 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

246.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Crowell '686 Patent, will infringe one or more claims of the Crowell '686 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

247.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Crowell '686 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Crowell '686 Patent.

248.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Crowell '686 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing into the United States, Defendants' denosumab biosimilar products before the expiration of the Crowell '686 Patent.

## COUNT 15: INFRINGEMENT OF THE DILLON '205 PATENT

249.    Paragraphs 1–248 are incorporated by reference as if fully set forth herein.

250.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Dillon '205 Patent has been or will be infringed, the Defendants have infringed the Dillon '205 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

251.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Dillon '205 Patent, including at least claims 1 and 40.

252.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Dillon '205 Patent, including at least claims 1 and 40, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

253.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Dillon '205 Patent, including at least claims 1 and 40. On information and

belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Dillon '205 Patent, constitutes willful infringement.

254.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Dillon '205 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

255.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Dillon '205 Patent.

## COUNT 16: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE DILLON '205 PATENT

256.    Paragraphs 1–255 are incorporated by reference as if fully set forth herein.

257.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Dillon '205 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Dillon '205 Patent, including at least claims 1 and 40, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed denosumab biosimilar products before expiration of the Dillon '205 Patent, or will actively induce such activities.

258.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Dillon '205 Patent, including at least claims 1 and 40, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

259.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Dillon '205 Patent, will infringe one or more claims of the Dillon '205 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

260.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Dillon '205 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Dillon '205 Patent.

261.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Dillon '205 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing into the United States, Defendants' denosumab biosimilar products before the expiration of the Dillon '205 Patent.

## COUNT 17: INFRINGEMENT OF THE HUANG '972 PATENT

262.    Paragraphs 1–261 are incorporated by reference as if fully set forth herein.

263.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Huang '972 Patent has been or will be infringed, the Defendants have infringed the Huang '972 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

264.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Huang '972 Patent, including at least claim 3.

265.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '972 Patent, including at least claim 3, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

266.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or

more claims of the Huang '972 Patent, including at least claim 3. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Huang '972 Patent, constitutes willful infringement.

267.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Huang '972 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

268.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Huang '972 Patent.

## COUNT 18: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE HUANG '972 PATENT

269.    Paragraphs 1–268 are incorporated by reference as if fully set forth herein.

270.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Huang '972 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '972 Patent, including at least claim 3, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Huang '972 Patent, or will actively induce such activities.

271.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '972 Patent, including at least claim 3, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

272.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Huang '972 Patent, will infringe one or more claims of the Huang '972 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

273.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Huang '972 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Huang '972 Patent.

274.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Huang '972 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Huang '972 Patent.

**COUNT 19: INFRINGEMENT OF THE HUANG '514 PATENT**

275.    Paragraphs 1–274 are incorporated by reference as if fully set forth herein.

276.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Huang '514 Patent has been or will be infringed, the Defendants have infringed the Huang '514 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

277.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Huang '514 Patent, including at least claim 1.

278.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '514 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

279.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Huang '514 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Huang '514 Patent, constitutes willful infringement.

280.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Huang '514 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

281.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Huang '514 Patent.

## COUNT 20: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE HUANG '514 PATENT

282.    Paragraphs 1–281 are incorporated by reference as if fully set forth herein.

283.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Huang '514 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '514 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Huang '514 Patent, or will actively induce such activities.

284.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '514 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

285.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Huang '514 Patent, will infringe one or more claims of the Huang '514 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

286.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Huang '514 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Huang '514 Patent.

287.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Huang '514 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Huang '514 Patent.

## COUNT 21: INFRINGEMENT OF THE HUANG '085 PATENT

288.    Paragraphs 1–287 are incorporated by reference as if fully set forth herein.

289.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Huang '085 Patent has been or will be infringed, the Defendants have infringed the Huang '085 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

290.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Huang '085 Patent, including at least claim 1.

291.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '085 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

292.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Huang '085 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Huang '085 Patent, constitutes willful infringement.

293.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Huang '085 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

294.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Huang '085 Patent.

## COUNT 22: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE HUANG '085 PATENT

295.    Paragraphs 1–294 are incorporated by reference as if fully set forth herein.

296.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Huang '085 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '085 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Huang '085 Patent, or will actively induce such activities.

297.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '085 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

298.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Huang '085 Patent, will infringe one or more claims of the Huang '085 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

299.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Huang '085 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Huang '085 Patent.

300.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Huang '085 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Huang '085 Patent.

## COUNT 23: INFRINGEMENT OF THE GUPTA '829 PATENT

301.    Paragraphs 1–300 are incorporated by reference as if fully set forth herein.

302.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gupta '829 Patent has been or will be infringed, the Defendants have infringed the Gupta '829 Patent under at least 35 U.S.C. §§ 271 (b), (e), and (g).

303.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gupta '829 Patent, including at least claim 1.

304.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '829 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

305.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gupta '829 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Gupta '829 Patent, constitutes willful infringement.

306.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Gupta '829 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

307.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Gupta '829 Patent.

## COUNT 24: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE GUPTA '829 PATENT

308.    Paragraphs 1–307 are incorporated by reference as if fully set forth herein.

309.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gupta '829 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '829 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Gupta '829 Patent, or will actively induce such activities.

310. On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '829 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

311. An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Gupta '829 Patent, will infringe one or more claims of the Gupta '829 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

312. Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Gupta '829 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Gupta '829 Patent.

313. Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Gupta '829 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Gupta '829 Patent.

## COUNT 25: INFRINGEMENT OF THE GUPTA '627 PATENT

314.     Paragraphs 1–313 are incorporated by reference as if fully set forth herein.

315.     Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gupta '627 Patent has been or will be infringed, the Defendants have infringed the Gupta '627 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

316.     On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gupta '627 Patent, including at least claim 6.

317.     On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '627 Patent, including at least claim 6, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

318.     On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gupta '627 Patent, including at least claim 6. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Gupta '627 Patent, constitutes willful infringement.

319.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Gupta '627 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

320.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Gupta '627 Patent.

## COUNT 26: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE GUPTA '627 PATENT

321.    Paragraphs 1–320 are incorporated by reference as if fully set forth herein.

322.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gupta '627 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '627 Patent, including at least claim 6, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Gupta '627 Patent, or will actively induce such activities.

323.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '627 Patent, including at least claim 6, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

324.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Gupta '627 Patent, will infringe one or more claims of the Gupta '627 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

325.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Gupta '627 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Gupta '627 Patent.

326.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Gupta '627 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Gupta '627 Patent.

## COUNT 27: INFRINGEMENT OF THE KANG '723 PATENT

327.    Paragraphs 1–326 are incorporated by reference as if fully set forth herein.

328.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Kang '723 Patent has been or will be infringed, the Defendants have infringed the Kang '723 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

329.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Kang '723 Patent, including at least claim 1.

330.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '723 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

331.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Kang '723 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Kang '723 Patent, constitutes willful infringement.

332.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Kang '723 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

333.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Kang '723 Patent.

## COUNT 28: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE KANG '723 PATENT

334.    Paragraphs 1–333 are incorporated by reference as if fully set forth herein.

335.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Kang '723 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '723 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Kang '723 Patent, or will actively induce such activities.

336.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '723 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

337.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Kang '723 Patent, will infringe one or more claims of the Kang '723 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

338.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Kang '723 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Kang '723 Patent.

339.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Kang '723 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Kang '723 Patent.

## COUNT 29: INFRINGEMENT OF THE KANG '963 PATENT

340.    Paragraphs 1–339 are incorporated by reference as if fully set forth herein.

341.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Kang '963 Patent has been or will be infringed, the Defendants have infringed the Kang '963 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

342.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Kang '963 Patent, including at least claim 1.

343.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '963 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

344.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Kang '963 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Kang '963 Patent, constitutes willful infringement.

345.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Kang '963 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

346.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Kang '963 Patent.

## COUNT 30: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE KANG '963 PATENT

347.    Paragraphs 1–346 are incorporated by reference as if fully set forth herein.

348.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Kang '963 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '963 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Kang '963 Patent, or will actively induce such activities.

349.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '963 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

350.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Kang '963 Patent, will infringe one or more claims of the Kang '963 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

351.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Kang '963 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Kang '963 Patent.

352.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Kang '963 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Kang '963 Patent.

## COUNT 31: INFRINGEMENT OF THE KANG '178 PATENT

353.    Paragraphs 1–352 are incorporated by reference as if fully set forth herein.

354.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Kang '178 Patent has been or will be infringed, the Defendants have infringed the Kang '178 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

355.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Kang '178 Patent, including at least claim 1.

356.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '178 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

357.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Kang '178 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Kang '178 Patent, constitutes willful infringement.

358.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Kang '178 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

359.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Kang '178 Patent.

## COUNT 32: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE KANG '178 PATENT

360.    Paragraphs 1–359 are incorporated by reference as if fully set forth herein.

361.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Kang '178 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '178 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Kang '178 Patent, or will actively induce such activities.

362.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '178 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

363.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Kang '178 Patent, will infringe one or more claims of the Kang '178 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

364.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Kang '178 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Kang '178 Patent.

365.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Kang '178 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Kang '178 Patent.

## COUNT 33: INFRINGEMENT OF THE GEFROH '397 PATENT

366.    Paragraphs 1–365 are incorporated by reference as if fully set forth herein.

367.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gefroh '397 Patent has been or will be infringed, the Defendants have infringed the Gefroh '397 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

368.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gefroh '397 Patent, including at least claim 13.

369.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '397 Patent, including at least claim 13, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

370.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gefroh '397 Patent, including at least claim 13. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Gefroh '397 Patent, constitutes willful infringement.

371.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '397 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

372.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Gefroh '397 Patent.

## COUNT 34: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE GEFROH '397 PATENT

373.    Paragraphs 1–372 are incorporated by reference as if fully set forth herein.

374.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gefroh '397 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '397 Patent, including at least claim 13, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Gefroh '397 Patent, or will actively induce such activities.

375.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '397 Patent, including at least claim 13, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

376.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Gefroh '397 Patent, will infringe one or more claims of the Gefroh '397 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

377.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Gefroh '397 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Gefroh '397 Patent.

378.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Gefroh '397 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Gefroh '397 Patent.

## COUNT 35: INFRINGEMENT OF THE GEFROH '404 PATENT

379.    Paragraphs 1–378 are incorporated by reference as if fully set forth herein.

380.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gefroh '404 Patent has been or will be infringed, the Defendants have infringed the Gefroh '404 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

381.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gefroh '404 Patent, including at least claim 14.

382.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '404 Patent, including at least claim 14, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

383.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gefroh '404 Patent, including at least claim 14. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Gefroh '404 Patent, constitutes willful infringement.

384.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '404 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

385.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Gefroh '404 Patent.

## COUNT 36: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE GEFROH '404 PATENT

386.    Paragraphs 1–385 are incorporated by reference as if fully set forth herein.

387.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gefroh '404 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '404 Patent, including at least claim 14, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Gefroh '404 Patent, or will actively induce such activities.

388.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '404 Patent, including at least claim 14, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

389.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Gefroh '404 Patent, will infringe one or more claims of the Gefroh '404 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

390.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Gefroh '404 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Gefroh '404 Patent.

391.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Gefroh '404 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Gefroh '404 Patent.

## COUNT 37: INFRINGEMENT OF THE HOANG '079 PATENT

392.    Paragraphs 1–391 are incorporated by reference as if fully set forth herein.

393.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Hoang '079 Patent has been or will be infringed, the Defendants have infringed the Hoang '079 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

394.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Hoang '079 Patent, including at least claim 1.

395.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Hoang '079 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

396.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Hoang '079 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Hoang '079 Patent, constitutes willful infringement.

397.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Hoang '079 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

398.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Hoang '079 Patent.

## COUNT 38: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE HOANG '079 PATENT

399.    Paragraphs 1–398 are incorporated by reference as if fully set forth herein.

400.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Hoang '079 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Hoang '079 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Hoang '079 Patent, or will actively induce such activities.

401.     On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Hoang '079 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

402.     An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Hoang '079 Patent, will infringe one or more claims of the Hoang '079 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

403.     Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Hoang '079 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Hoang '079 Patent.

404.     Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Hoang '079 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Hoang '079 Patent.

## COUNT 39: INFRINGEMENT OF THE TREJO '919 PATENT

405.    Paragraphs 1–404 are incorporated by reference as if fully set forth herein.

406.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Trejo '919 Patent has been or will be infringed, the Defendants have infringed the Trejo '919 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

407.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Trejo '919 Patent, including at least claim 1.

408.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Trejo '919 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

409.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Trejo '919 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Trejo '919 Patent, constitutes willful infringement.

410.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Trejo '919 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

411.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Trejo '919 Patent.

## COUNT 40: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE TREJO '919 PATENT

412.    Paragraphs 1–411 are incorporated by reference as if fully set forth herein.

413.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Trejo '919 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Trejo '919 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Trejo '919 Patent, or will actively induce such activities.

414.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Trejo '919 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

415.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Trejo '919 Patent, will infringe one or more claims of the Trejo '919 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

416.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Trejo '919 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Trejo '919 Patent.

417.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Trejo '919 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Trejo '919 Patent.

## COUNT 41: INFRINGEMENT OF THE TREJO '372 PATENT

418.    Paragraphs 1–417 are incorporated by reference as if fully set forth herein.

419.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Trejo '372 Patent has been or will be infringed, the Defendants have infringed the Trejo '372 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

420.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Trejo '372 Patent, including at least claim 1.

421.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Trejo '372 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

422.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Trejo '372 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Trejo '372 Patent, constitutes willful infringement.

423.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Trejo '372 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

424.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Trejo '372 Patent.

## COUNT 42: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE TREJO '372 PATENT

425.    Paragraphs 1–424 are incorporated by reference as if fully set forth herein.

426.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Trejo '372 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Trejo '372 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Trejo '372 Patent, or will actively induce such activities.

427.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Trejo '372 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

428.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Trejo '372 Patent, will infringe one or more claims of the Trejo '372 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

429.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Trejo '372 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Trejo '372 Patent.

430.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Trejo '372 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Trejo '372 Patent.

## COUNT 43: INFRINGEMENT OF THE LEISKE '492 PATENT

431.     Paragraphs 1–430 are incorporated by reference as if fully set forth herein.

432.     Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Leiske '492 Patent has been or will be infringed, the Defendants have infringed the Leiske '492 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

433.     On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Leiske '492 Patent, including at least claim 1.

434.     On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Leiske '492 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

435.     On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Leiske '492 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Leiske '492 Patent, constitutes willful infringement.

436.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Leiske '492 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

437.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Leiske '492 Patent.

## COUNT 44: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE LEISKE '492 PATENT

438.    Paragraphs 1–437 are incorporated by reference as if fully set forth herein.

439.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Leiske '492 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Leiske '492 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Leiske '492 Patent, or will actively induce such activities.

440.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Leiske '492 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

441.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Leiske '492 Patent, will infringe one or more claims of the Leiske '492 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

442.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Leiske '492 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Leiske '492 Patent.

443.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Leiske '492 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Leiske '492 Patent.

## COUNT 45: INFRINGEMENT OF THE LEISKE '630 PATENT

444.    Paragraphs 1–443 are incorporated by reference as if fully set forth herein.

445.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Leiske '630 Patent has been or will be infringed, the Defendants have infringed the Leiske '630 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

446.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Leiske '630 Patent, including at least claim 1.

447.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Leiske '630 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

448.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Leiske '630 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Leiske '630 Patent, constitutes willful infringement.

449.   Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Leiske '630 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages. Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Leiske '630 Patent.

## COUNT 46: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE LEISKE '630 PATENT

450.   Paragraphs 1–448 are incorporated by reference as if fully set forth herein.

451.   Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Leiske '630 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Leiske '630 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Leiske '630 Patent, or will actively induce such activities.

452.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Leiske '630 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

453.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Leiske '630 Patent, will infringe one or more claims of the Leiske '630 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

454.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Leiske '630 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Leiske '630 Patent.

455.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Leiske '630 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Leiske '630 Patent.

## COUNT 47: INFRINGEMENT OF THE MORRIS '236 PATENT

456.    Paragraphs 1–455 are incorporated by reference as if fully set forth herein.

457.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Morris '236 Patent has been or will be infringed, the Defendants have infringed the Morris '236 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

458.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Morris '236 Patent, including at least claim 35.

459.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Morris '236 Patent, including at least claim 35, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

460.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Morris '236 Patent, including at least claim 35. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Morris '236 Patent, constitutes willful infringement.

461.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Morris '236 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

462.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Morris '236 Patent.

## COUNT 48: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE MORRIS '236 PATENT

463.    Paragraphs 1–462 are incorporated by reference as if fully set forth herein.

464.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Morris '236 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Morris '236 Patent, including at least claim 35, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Morris '236 Patent, or will actively induce such activities.

465.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Morris '236 Patent, including at least claim 35, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

466.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Morris '236 Patent, will infringe one or more claims of the Morris '236 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

467.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Morris '236 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Morris '236 Patent.

468.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Morris '236 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Morris '236 Patent.

## COUNT 49: INFRINGEMENT OF THE MORRIS '168 PATENT

469.    Paragraphs 1–468 are incorporated by reference as if fully set forth herein.

470.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Morris '168 Patent has been or will be infringed, the Defendants have infringed the Morris '168 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

471.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Morris '168 Patent, including at least claim 33.

472.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Morris '168 Patent, including at least claim 33, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

473.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Morris '168 Patent, including at least claim 33. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Morris '168 Patent, constitutes willful infringement.

474.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Morris '168 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

475.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Morris '168 Patent.

## COUNT 50: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE MORRIS '168 PATENT

476.    Paragraphs 1–475 are incorporated by reference as if fully set forth herein.

477.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Morris '168 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Morris '168 Patent, including at least claim 33, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Morris '168 Patent, or will actively induce such activities.

478.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Morris '168 Patent, including at least claim 33, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

479.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Morris '168 Patent, will infringe one or more claims of the Morris '168 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

480.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Morris '168 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Morris '168 Patent.

481.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Morris '168 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Morris '168 Patent.

## COUNT 51: INFRINGEMENT OF THE PANDE '760 PATENT

482.     Paragraphs 1–481 are incorporated by reference as if fully set forth herein.

483.     Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Pande '760 Patent has been or will be infringed, the Defendants have infringed the Pande '760 Patent under at least 35 U.S.C. §§ 271(b), (e) and (g).

484.     On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Pande '760 Patent, including at least claim 1.

485.     On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Pande '760 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

486.     On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Pande '760 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Pande '760 Patent, constitutes willful infringement

487.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Pande '760 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

488.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Pande '760 Patent.

## COUNT 52: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE PANDE '760 PATENT

489.    Paragraphs 1–488 are incorporated by reference as if fully set forth herein.

490.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Pande '760 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Pande '760 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Pande '760 Patent, or will actively induce such activities.

491.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Pande '760 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

492.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Pande '760 Patent, will infringe one or more claims of the Pande '760 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

493.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Pande '760 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Pande '760 Patent.

494.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Pande '760 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Pande '760 Patent.

## COUNT 53: INFRINGEMENT OF THE PANDE '980

495.    Paragraphs 1–494 are incorporated by reference as if fully set forth herein.

496.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Pande '980 Patent has been or will be infringed, the Defendants have infringed the Pande '980 Patent under at least 35 U.S.C. §§ 271(b), (e) and (g).

497.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Pande '980 Patent, including at least claim 1.

498.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Pande '980 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

499.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Pande '980 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Pande '980 Patent, constitutes willful infringement.

500.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Pande '980 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

501.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Pande '980 Patent.

## COUNT 54: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE PANDE '980

502.    Paragraphs 1–501 are incorporated by reference as if fully set forth herein.

503.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Pande '980 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Pande '980 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Pande '980 Patent, or will actively induce such activities.

504.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Pande '980 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

505.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Pande '980 Patent, will infringe one or more claims of the Pande '980 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

506.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Pande '980 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Pande '980 Patent.

507.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Pande '980 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Pande '980 Patent.

## COUNT 55: INFRINGEMENT OF THE WU '435 PATENT

508.    Paragraphs 1–507 are incorporated by reference as if fully set forth herein.

509.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '435 Patent has been or will be infringed, the Defendants have infringed the Wu '435 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

510.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '435 Patent, including at least claim 1.

511.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '435 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

512.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '435 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Wu '435 Patent, constitutes willful infringement.

513.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Wu '435 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

514.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Wu '435 Patent.

## COUNT 56: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE WU '435 PATENT

515.    Paragraphs 1–514 are incorporated by reference as if fully set forth herein.

516.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '435 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '435 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Wu '435 Patent, or will actively induce such activities.

517.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '435 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

518.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Wu '435 Patent, will infringe one or more claims of the Wu '435 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

519.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Wu '435 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Wu '435 Patent.

520.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Wu '435 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Wu '435 Patent.

## COUNT 57: INFRINGEMENT OF THE WU '568 PATENT

521.    Paragraphs 1–520 are incorporated by reference as if fully set forth herein.

522.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '568 Patent has been or will be infringed, the Defendants have infringed the Wu '568 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

523.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '568 Patent, including at least claim 1.

524.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '568 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

525.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '568 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Wu '568 Patent, constitutes willful infringement.

526.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Wu '568 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

527.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Wu '568 Patent.

## COUNT 58: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE WU '568 PATENT

528.    Paragraphs 1–527 are incorporated by reference as if fully set forth herein.

529.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '568 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '568 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Wu '568 Patent, or will actively induce such activities.

530. On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '568 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

531. An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Wu '568 Patent, will infringe one or more claims of the Wu '568 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

532. Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Wu '568 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Wu '568 Patent.

533. Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Wu '568 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Wu '568 Patent.

## COUNT 59: INFRINGEMENT OF THE WU '595 PATENT

534.    Paragraphs 1–533 are incorporated by reference as if fully set forth herein.

535.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '595 Patent has been or will be infringed, the Defendants have infringed the Wu '595 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

536.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '595 Patent, including at least claim 1.

537.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '595 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

538.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '595 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Wu '595 Patent, constitutes willful infringement.

539.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Wu '595 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

540.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Wu '595 Patent.

## COUNT 60: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE WU '595 PATENT

541.    Paragraphs 1–540 are incorporated by reference as if fully set forth herein.

542.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '595 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '595 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Wu '595 Patent, or will actively induce such activities.

543.     On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '595 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

544.     An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Wu '595 Patent, will infringe one or more claims of the Wu '595 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

545.     Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Wu '595 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Wu '595 Patent.

546.     Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Wu '595 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Wu '595 Patent.

## COUNT 61: INFRINGEMENT OF THE WU '605 PATENT

547.    Paragraphs 1–546 are incorporated by reference as if fully set forth herein.

548.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '605 Patent has been or will be infringed, the Defendants have infringed the Wu '605 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

549.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '605 Patent, including at least claim 1.

550.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '605 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

551.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from Iceland and India into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '605 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Wu '605 Patent, constitutes willful infringement.

552.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Wu '605 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

553.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Wu '605 Patent.

## COUNT 62: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE WU '605 PATENT

554.    Paragraphs 1–553 are incorporated by reference as if fully set forth herein.

555.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '605 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '605 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Wu '605 Patent, or will actively induce such activities.

556.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '605 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

557.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Wu '605 Patent, will infringe one or more claims of the Wu '605 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

558.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Wu '605 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Wu '605 Patent.

559.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Wu '605 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Wu '605 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Amgen with respect to the Patents-in-Suit respectfully requests that this Court enter judgment in their favor against Defendants and grant the following relief:

A.    A judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Patents-in-Suit under 35 U.S.C. § 271(e)(2)(C);

B.    Based on that judgment, a permanent injunction against the commercial manufacture, use, offer to sell, and sale within the United States, and importation into the United States, of Defendants' denosumab biosimilar products before the expiration of each of the Patents-in-Suit that are found infringed;

C.    A judgment that Defendants have infringed and/or will infringe one or more claims of each of the Patents-in-Suit by making, using, offering for sale, or selling within the United States, or importing into the United States, one or more of Defendants' denosumab biosimilar products during the term of the Patents-in-Suit;

D.    Based on that judgment, a permanent injunction against future infringement by Defendants, as well as by its officers, employees, agents, representatives, affiliates, assignees, successors, and all persons acting on behalf of, at the direction of, or in active concert with Defendants, until each of the Patents-in-Suit that are found infringed has expired;

E.    A judgment and order requiring Defendants to pay Amgen damages in an amount adequate to compensate Amgen for Defendants' infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of judgment and beyond, with accounting, as needed;

F.      A declaration that this is an exceptional case and awarding attorneys' fees and costs pursuant to 35 U.S.C. § 285;

G.      On all counts, such other relief in law and equity as this Court may deem just, necessary, or proper.

## <u>DEMAND FOR A JURY TRIAL</u>

Amgen hereby demands a jury trial on all issues so triable.


Dated: November 6, 2025


_/s/ Liza M. Walsh_
Liza M. Walsh
Marc D. Haefner
Jessica K. Formichella
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100
lwalsh@walsh.law
mhaefner@walsh.law
jformichella@walsh.law

OF COUNSEL:

Steven J. Horowitz
Richard M. Chen
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
shorowitz@sidley.com
rchen@sidley.com

David L. Anderson
Sue Wang
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA 94104
(415) 772-1200
dlanderson@sidley.com
sue.wang@sidley.com

Jeffrey P. Kushan
Joshua J. Fougere
Lauren Katzeff
Jillian Sheridan Stonecipher
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, D.C. 20005
(202) 736-8700
jkushan@sidley.com
jfougere@sidley.com
lkatzeff@sidley.com
jstonecipher@sidley.com

Michael D. Hatcher
SIDLEY AUSTIN LLP
2021 McKinney Ave #2000
Dallas, TX 75201
(214) 981-3300
mhatcher@sidley.com

Siegmund Y. Gutman
David M. Hanna
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND
POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 226-7866
sgutman@mintz.com
dhanna@mintz.com

Wendy A. Whiteford
Steven T. Tang
C. Nichole Gifford
Alaina M. Whitt
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
(805) 447-1000

Samuel N. Tiu
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California 90013
(213) 896-6000
stiu@sidley.com

James High
AMGEN INC.
750 Gateway Blvd., St. 100
San Francisco, CA 94080
(650) 244-2000

*Attorneys for Amgen Inc. and Amgen Manufacturing Limited LLC*

## <u>RULE 11.2 CERTIFICATION</u>

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding, nor are there any non-parties known to Plaintiffs that should be joined to this action. In addition, I recognize a continuing obligation during the course of this litigation to file and to serve on all other parties and with the Court an amended certification if there is a change in the facts stated in this original certification.

Dated: November 6, 2025

*/s/ Liza M. Walsh*
Liza M. Walsh
Marc D. Haefner
Jessica K. Formichella
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100
lwalsh@walsh.law
mhaefner@walsh.law
jformichella@walsh.law

OF COUNSEL:

Steven J. Horowitz
Richard M. Chen
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
shorowitz@sidley.com
rchen@sidley.com

David L. Anderson
Sue Wang
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA 94104
(415) 772-1200
dlanderson@sidley.com
sue.wang@sidley.com

Jeffrey P. Kushan
Joshua J. Fougere
Lauren Katzeff
Jillian Sheridan Stonecipher
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, D.C. 20005
(202) 736-8700
jkushan@sidley.com
jfougere@sidley.com
lkatzeff@sidley.com
jstonecipher@sidley.com

Michael D. Hatcher
SIDLEY AUSTIN LLP
2021 McKinney Ave #2000
Dallas, TX 75201
(214) 981-3300
mhatcher@sidley.com

Siegmund Y. Gutman
David M. Hanna
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND
POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 226-7866
sgutman@mintz.com
dhanna@mintz.com

Wendy A. Whiteford
Steven T. Tang
C. Nichole Gifford
Alaina M. Whitt
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
(805) 447-1000

Samuel N. Tiu
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California 90013
(213) 896-6000
stiu@sidley.com

James High
AMGEN INC.
750 Gateway Blvd., St. 100
San Francisco, CA 94080
(650) 244-2000

*Attorneys for Amgen Inc. and Amgen Manufacturing Limited LLC*

## <u>LOCAL RULE 201.1 CERTIFICATION</u>

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the Plaintiffs seek, *inter alia*, injunctive relief.

Dated: November 6, 2025

*/s/ Liza M. Walsh*
Liza M. Walsh
Marc D. Haefner
Jessica K. Formichella
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100
lwalsh@walsh.law
mhaefner@walsh.law
jformichella@walsh.law

OF COUNSEL:

Steven J. Horowitz                    David L. Anderson
Richard M. Chen                       Sue Wang
SIDLEY AUSTIN LLP                     SIDLEY AUSTIN LLP
One South Dearborn                    555 California Street
Chicago, Illinois 60603               San Francisco, CA 94104
(312) 853-7000                        (415) 772-1200
shorowitz@sidley.com                  dlanderson@sidley.com
rchen@sidley.com                      sue.wang@sidley.com

142

Jeffrey P. Kushan
Joshua J. Fougere
Lauren Katzeff
Jillian Sheridan Stonecipher
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, D.C. 20005
(202) 736-8700
jkushan@sidley.com
jfougere@sidley.com
lkatzeff@sidley.com
jstonecipher@sidley.com

Michael D. Hatcher
SIDLEY AUSTIN LLP
2021 McKinney Ave #2000
Dallas, TX 75201
(214) 981-3300
mhatcher@sidley.com

Siegmund Y. Gutman
David M. Hanna
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND
POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 226-7866
sgutman@mintz.com
dhanna@mintz.com

Wendy A. Whiteford
Steven T. Tang
C. Nichole Gifford
Alaina M. Whitt
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
(805) 447-1000

Samuel N. Tiu
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California 90013
(213) 896-6000
stiu@sidley.com

James High
AMGEN INC.
750 Gateway Blvd., St. 100
San Francisco, CA 94080
(650) 244-2000

*Attorneys for Amgen Inc. and Amgen Manufacturing Limited LLC*